[Cite as *State v. Bogan*, 2018-Ohio-4211.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 106183

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**CLARENCE BOGAN**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-605087-A

**BEFORE:** E.T. Gallagher, J., E.A. Gallagher, A.J., and Keough, J.

**RELEASED AND JOURNALIZED:** October 18, 2018

**ATTORNEYS FOR APPELLANT**

Mark Stanton
Cuyahoga County Public Defender

BY:    Erika B. Cunliffe
Assistant Public Defender
Courthouse Square, Suite 200
310 Lakeside Avenue
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:    Frank Romeo Zeleznikar
Daniel A. Cleary
Jennifer A. Driscoll
Assistant Prosecuting Attorneys
The Justice Center, 8th and 9th Floors
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant, Clarence Bogan, appeals from the trial court's denial of his motion to dismiss charges pending against him on double jeopardy grounds. He raises the following assignment of error for review:

> The trial court's decision to grant a mistrial where there was no manifest necessity to justify doing so was unreasonable and any retrial on the underlying charges would violate the prohibition against Double Jeopardy under the State and Federal Constitutions.

{¶2} After careful review of the record and relevant case law, we affirm the trial court's judgment.

## I. Procedural History

{¶3} In April 2016, Bogan was named in a four-count indictment, charging him with aggravated murder in violation of R.C. 2903.01(A);[1] murder in violation of R.C. 2903.02(B); felonious assault in violation of R.C. 2903.11(A)(1), with repeat violent offender and notice of prior conviction specifications; and domestic violence in violation of R.C. 2919.25(A). The indictment stemmed from the death of Bogan's girlfriend, Stacy Tucker, in February 2016.

{¶4} The matter proceeded to a jury trial on July 12, 2017. Throughout the course of trial, Bogan continuously attempted to communicate, both audibly and inaudibly, with the trial court and members of the jury. Based on Bogan's repeated disruptions, the trial court was required to reprimand Bogan and instruct defense counsel "to exercise better control over their client."

{¶5} Relevant to this appeal, the record reflects that defense counsel requested the trial court to declare a mistrial on two separate occasions. The oral motions pertained to (1) an

---

[1] On July 20, 2017, Count 1 was amended to murder in violation of R.C. 2903.02(A).

"unsolicited outburst" of a witness that "an innocent woman that was tinier than me * * * woke up dead the next morning, or being dead the next morning by his [Bogan's] own words," and (2) hearsay statements concerning Bogan's physical abuse of Tucker. (Tr. 873, 1072.) The trial court denied each motion for a mistrial and offered to provide curative instructions when necessary. Just prior to the conclusion of trial, defense counsel renewed its request for a mistrial, which the trial court denied. (Tr. 1108.)

{¶6} Closing arguments concluded on July 20, 2017. During jury deliberations, the jury foreperson sent the trial court a note on July 21, 2017. The note questioned the competency of Juror No. 5 to deliberate and render a fair verdict. Upon receiving the note, the trial court provided the jury with the following instruction:

> During your deliberations you must consult with one another, consider each other's views and deliberate with the objective of reaching an agreement if you can do so without disturbing your individual judgment.

> Each of you must decide this case for yourself but you should do so only after a discussion and consideration of the case with your fellow jurors. Do not hesitate to change an opinion if convinced that it is wrong. However, you should not surrender honest convictions in order to be congenial or to reach a verdict solely because of the opinion of other jurors.

{¶7} Later that afternoon, the trial court was notified that a courthouse employee had observed Bogan attempt to communicate with Juror No. 5 during the course of trial. Thus, a hearing was held to determine whether the perceived communications warranted further action by the court. At the hearing, the courthouse employee testified, in relevant part:

> I was sitting in the second row watching the defendant watching the jurors. I saw Clarence Bogan mouth words over as he was looking over this way to somebody. At the time the person testifying was the lady from the Coroner's Office. And then I saw the juror, Juror [No.] 5, watching the defendant and smile back. That's it.

{¶8} The courthouse employee conceded that she did not see Juror No. 5 communicate anything back to Bogan and that she "could not tell what [Bogan] was mouthing" towards the juror. She further testified that she did not observe any other communication between Bogan and Juror No. 5 during the trial.

{¶9} After careful consideration, the trial court concluded that Bogan's attempts to communicate with Juror No. 5 did not "rise to a level where we need to take it any further." Accordingly, the jury was instructed to continue its deliberations.

{¶10} On July 24, 2017, the trial court received an additional note from the jury foreperson. The note stated, in its entirety:

> We are at an impasse on three out of four counts. Further deliberations would be fruitless. This morning the one juror erased out her name from the verdict form on Count Four, so we no longer have a verdict on that count.

{¶11} Upon receiving the note from the jury, the trial court determined that it was necessary to declare a mistrial based on "the numerous allegations of jury misconduct as well as the difficulty with the jury." Neither the state nor defense counsel objected to the trial court's declaration. Thus, the jury was discharged. Thereafter, the parties engaged in discussions to schedule a new trial. In addition, defense counsel moved the court to permit Bogan to obtain an additional expert witness for the new trial, which the trial court granted.

{¶12} The following day, a hearing was held to address defense counsel's belief that a final verdict had been rendered on two of the counts before the mistrial was declared. The trial court quickly rejected defense counsel's position, stating that the mistrial had been declared before the court even had the opportunity to view the jury verdict forms. In addition, the court noted that while the jury verdict forms reflected that the jury had reached a preliminary verdict of not guilty on Count 1, "they were still deliberating about it and talking about the verdicts that

they had rendered." Thus, the trial court concluded that because the verdict forms had not been taken by the court or announced in open court, no final verdict occurred prior to the mistrial declaration.

{¶13} Immediately following the court's assessment of the verdict, defense counsel argued, for the first time, that the trial court's decision to declare a mistrial before considering alternative remedies was improper. Defense counsel argued, in relevant part:

> You went ahead and dismissed the case without giving anybody any type of an opportunity to cure it, and now that not guilty is not going to be on the record and now, from what our perspective is, if you're going to retry it, which I know you intend to do on August 22nd, we believe it's double jeopardy. Definitely on Count 1.

{¶14} On July 31, 2017, the trial court issued a written order in support of its decision to declare a mistrial. The order provides, in part:

> Due to the Court's belief that the behavior on the part of Defendant Bogan, as well as Juror [No.] 5, undermined the integrity of the proceeding, and led to the manifest necessity for a mistrial, Defendant's Double Jeopardy defense will be unavailable to the Defendant, and this case will be scheduled for a retrial. As no final verdict was reached in the first trial, the retrial will be as to all counts previously submitted to the jury.

{¶15} The trial court reiterated its position that the circumstances of this case presented a manifest necessity for a mistrial, stating:

> The entire trial was marred with misconduct on behalf of the Defendant as well as a juror, which ultimately led to a declaration of a mistrial. During the course of trial it was necessary for the Court to advise Defendant's counsel, as well as Defendant directly, that the Court would not allow the continued disrespect on behalf of Defendant towards the jurors as well as the Court. Defendant's conduct during trial was so egregious that it was determined by the Court to be undermining the integrity of the proceedings, and Defendant [was] therefore reprimanded in open court and advised to cease the disrupting behavior. Throughout the jury deliberations process there were also multiple notifications to the Court, via the jury foreperson, of juror misconduct and bias on behalf of one of the jurors, Juror [No.] 5. Throughout the trial it was noted by a number of individuals, individuals on the jury as well as the court, that it appeared that Juror

[No.] 5 and Defendant were communicating with one another during testimony, both by non-audible mouth movements and body gestures. The foreperson further instructed the court that the jurors were unable to communicate with Juror [No.] 5, thereby hindering their ability to come to a verdict. There was an undeniable perception, in the Court's view, that there was misconduct by both the Defendant and Juror [No.] 5 during the pendency of the case which undermined the integrity of the proceedings and required both a reprimand, as it pertains to Defendant, and ultimately the declaration of a mistrial prior to completion of the jury deliberation and verdict, based upon the behavior of both Juror [No.] 5 and Defendant.

* * *

The circumstances represented above proved to the Court that the prosecution would not be afforded a fair trial based on the misconduct of the Defendant and Juror [No.] 5, and that there existed no possibility of a just result. Accordingly, a mistrial was declared.

{¶16} Just before the retrial was set to commence, Bogan filed a motion to dismiss his indictment pursuant to Crim.R. 12(C). In the motion, Bogan argued the trial court abused its discretion in ordering a mistrial in the absence of a manifest necessity and, therefore, his retrial is barred by constitutional double jeopardy protections. Following a hearing, the trial court denied Bogan's motion to dismiss.

{¶17} Bogan now appeals the trial court's judgment denying his motion to dismiss.

## II.   Law and Analysis

{¶18} In his sole assignment of error, Bogan argues the trial court erred by denying his motion to dismiss his indictment. Bogan contends that there was not a manifest necessity for the trial court's mistrial declaration and, therefore, any retrial on the underlying charges would violate the prohibition against double jeopardy under the state and federal constitutions.

### A. Jurisdiction and Standard of Review

{¶19} "A grant of a motion for mistrial has long been held not to be a final appealable order 'for the basic reason that it is not a judgment or order in favor of either of the parties which

gives finality to the case.'" *State v. Nixon,* 5th Dist. Richland No. 2016 CA 0008, 2017-Ohio-8, ¶ 16, quoting *Mack v. Gulf Oil Co., Inc.*, 10th Dist. Franklin No. 76AP-299, 1976 WL 190161 (Aug. 24, 1976). But an order denying a motion to dismiss on double-jeopardy grounds is a final appealable order. *State v. Anderson*, 138 Ohio St.3d 264, 2014-Ohio-542, 6 N.E.3d 23, ¶ 61. Thus, a court can review the granting of a mistrial in an appeal from the denial of a motion to dismiss an indictment after the mistrial. *See, e.g.*, *State v. Carter*, 4th Dist. Adams No. 15CA1015, 2016-Ohio-5371, ¶ 36-39.

{¶20} "Appellate courts apply a de novo standard of review when reviewing the denial of a motion to dismiss an indictment on the grounds of double jeopardy." *State v. Anderson*, 148 Ohio St.3d 74, 2016-Ohio-5791, 68 N.E.3d 790, ¶ 20. But when the dismissal motion is based on a challenge to a trial court's underlying declaration of a mistrial, we apply an abuse of discretion standard of review to that part of our analysis. *Carter* at ¶ 38, citing *U.S. v. Keene,* 287 F.3d 229, 233-234 (1st Cir.2002); *U.S. v. Williamson*, 656 Fed.Appx. 175, 180 (6th Cir.2016) (appellate court reviews de novo a trial court's denial of a motion to dismiss based on double jeopardy, but reviews the trial court's underlying decision to grant a mistrial for abuse of discretion); *State v. Gunnell*, 132 Ohio St.3d 442, 2012-Ohio-3236, 973 N.E.2d 243, ¶ 28-29 (applying an abuse of discretion standard of review to a trial court's declaration of mistrial).

### B. Manifest Necessity and Double Jeopardy

{¶21} The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, and Article I, Section 10 of the Ohio Constitution protect a criminal defendant against repeated prosecutions for the same offense. *Oregon v. Kennedy*, 456 U.S. 667, 671, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982);

*State v. Kareski*, 137 Ohio St.3d 92, 2013-Ohio-4008, 998 N.E.2d 410, ¶ 14. The policy underlying this protection is to ensure that

> "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

*U.S. v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), quoting *Green v. U.S.*, 355 U.S. 184, 187-188, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

{¶22} The constitutional protection granted a criminal defendant under the Double Jeopardy Clause also encompasses the defendant's "'valued right to have his trial completed by a particular tribunal.'" *Oregon* at 671-672, quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949). This right, however, is not unlimited. In some instances, the defendant's right to have his case resolved by a particular tribunal must "be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade* at 689; *see also Arizona v. Washington*, 434 U.S. 497, 515, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) ("Neither party has a right to have his case decided by a jury which may be tainted by bias; in these circumstances, 'the public's interest in fair trials designed to end in just judgments' must prevail over the defendant's 'valued right' to have his trial concluded before the first jury impaneled."). Thus, the Double Jeopardy Clause does not bar reprosecution in every case. "Generally, retrial is permitted whenever a mistrial is declared at the request of or with the consent of the defendant." *State v. Juchum*, 9th Dist. Summit No. 2186-M, 1993 Ohio App. LEXIS 2699, 3 (May 26, 1993), citing 21 American Jurisprudence 2d 504, Criminal Law, Section 286 (1981).

{¶23} In a case where a mistrial has been declared *without the defendant's request or consent*, double jeopardy will not bar a retrial if (1) there was a manifest necessity or high degree

of necessity for ordering a mistrial; or (2) the ends of public justice would otherwise be defeated. *State v. Widner*, 68 Ohio St.2d 188, 189, 429 N.E.2d 1065 (1981), citing *Washington* at 505. "Manifest necessity" means a "high degree" of necessity must exist before a mistrial may properly be declared. However, it does not require a showing that a mistrial was "absolutely necessary" or that there was no other alternative but to declare a mistrial. *Washington* at 511.

{¶24} There is no "mechanical formula" for determining what constitutes a "manifest necessity" for a mistrial. "[T]he manifest-necessity standard 'abjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial.'" *Gunnell*, 132 Ohio St.3d 442, 2012-Ohio-3236, 973 N.E.2d 243, at ¶ 27, quoting *Illinois v. Somerville*, 410 U.S. 458, 462, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). What constitutes a manifest necessity for a mistrial is, therefore, left to the discretion of the trial court to be decided on a case-by-case basis, taking into account all the relevant circumstances. This approach is "in recognition of the fact that the trial judge is in the best position to determine whether the situation in his [or her] courtroom warrants the declaration of a mistrial." *State v. Glover*, 35 Ohio St.3d 18, 19, 517 N.E.2d 900 (1988). However, "'the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.'" *Gunnell* at ¶ 26, quoting *U.S. v. Perez*, 22 U.S. 579, 580, 6 L.Ed. 165 (1824). "A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened, unless the substantial rights of the accused or the prosecution are adversely affected * * * ." *State v. Reynolds*, 49 Ohio App.3d 27, 550 N.E.2d 490 (2d Dist.1988), paragraph two of the syllabus. The granting of a mistrial is necessary only when "a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991).

**{¶25}** In determining whether a mistrial is necessary, the exercise of "sound discretion" generally requires that a trial court (1) allow both parties to state their positions on the issue, (2) consider their competing interests, and (3) explore reasonable alternatives, if any, before declaring a mistrial. *N. Olmsted v. Himes*, 8th Dist. Cuyahoga Nos. 84076 and 84078, 2004-Ohio-4241, ¶ 44. A trial court must act "rationally, responsibly, and deliberately" in determining whether to declare a mistrial. *Gunnell* at ¶ 33. However, a trial court's failure to make an explicit finding of "manifest necessity" does not render a mistrial declaration invalid, as long as the record provides sufficient justification for the ruling. *Washington*, 434 U.S. at 516-517, 98 S.Ct. 824, 54 L.Ed.2d 717.

**{¶26}** On appeal, Bogan argues the reasons provided by the trial court for its declaration of a mistrial were inconsistent with the court's earlier determination that defendant's non-verbal communications with juror No. 5 during trial were not significant enough to require "further action." According to Bogan, "the trial court based [its] mistrial declaration on 'juror misconduct' even though the court had just concluded that there had been none." Thus, Bogan contends that the trial court's judgment is not supported by the record "in any fashion." Bogan further argues that, even if the record supported a finding of juror misconduct, the trial court failed to explore alternative remedies, including the substitution of juror No. 5 with the alternate juror.

**{¶27}** Unquestionably, the record reflects that the trial court did not consider the procedural guidelines discussed in *Himes* before it declared a mistrial in this case based on a manifest necessity. At the onset of the July 24, 2017 hearing, the trial court immediately declared a mistrial based on "numerous allegations of jury misconduct as well as the difficulty with the jury." Thus, the trial court declared a mistrial before allowing the parties to state their

positions on the issue, considering their competing interests, or exploring reasonable alternatives on the record. Nor did the trial court conduct an inquiry of Juror No. 5 to "ascertain the scope of the prejudice, if any, to the [state] before determining that the juror could not be rehabilitated and that a mistrial was necessary." *Gunnell*, 132 Ohio St.3d 442, 2012-Ohio-3236, 973 N.E.2d 243, at ¶ 40. Thus, the procedural deficiencies complained of by Bogan are readily apparent on this record.

{¶28} However, having acknowledged the trial court's shortfalls, we find the unique circumstances of this case do not require this court to evaluate the substantive basis supporting the court's discretionary finding of manifest necessity. For the reasons that follow, we find Bogan implicitly consented to the mistrial at the time it was declared on July 24, 2017. Therefore, he cannot now claim his retrial is barred by the principle of double jeopardy. *See State v. Jackson*, 6th Dist. Lucas No. L-89-196, 1990 Ohio App. LEXIS 1340 (April 6, 1990).

{¶29} As stated, "[t]he general rule is that mistrials, granted at the request of defendant or *with the defendant's consent*, do not bar retrial on the basis of double jeopardy." (Emphasis sic.) *Id.* at 4, citing *U.S. v. Dinitz*, 424 U.S. 600, 606, 96 S.Ct. 1075, 47 L.Ed.2d 267(1976); *U.S. v. Puleo*, 817 F.2d 702 (11th Cir.1987). In determining whether a defendant has consented to the declaration of a mistrial, the consent need not be expressly stated. *Id.*, citing *Puleo* at 705. Rather, consent may be implied from the "totality of the circumstances attendant on a declaration of mistrial." *Id.*, *citing U.S. v. Goldstein,* 479 F.2d 1061, 1067 (2d Cir.1973). For instance, in *Puleo* and *Jackson,* the courts held that "when a defendant has had an opportunity to object to the declaration of a mistrial and fails to do so his consent to the declaration of a mistrial may be implied." *Puleo*, at 705; *Jackson* at 4.

**{¶30}** In this case, our review of the record demonstrates that Bogan did not expressly object to the trial court's declaration of a mistrial during the July 24, 2017 hearing. Bogan had a meaningful opportunity to raise an objection to the mistrial declaration during the remainder of the hearing, but chose to forego that opportunity. *See Love v. Morton*, 944 F.Supp. 379 (D.N.J.1996) ("Counsel has ample meaningful opportunity to object where following a mistrial declaration the trial judge remains available to entertain other objections, schedule the second trial, or otherwise discuss the case with counsel.") We recognize that the failure to object is just one factor to be considered and may not always equate to a finding of implied consent. *See Washington v. Jarvis*, 137 Fed.Appx. 543, 554 (4th Cir.2005) (finding the United States Supreme Court has always required that consent to mistrial must be determined based on a "totality of the circumstances" and has never adopted a bright-line rule that consent is implied when a defendant has an opportunity to object but does not explicitly express an objection). Nevertheless, we conclude that a finding of implied consent is warranted in this case.

**{¶31}** Beyond the lack of an express objection, Bogan's consent may be implied from the "totality of the circumstances attendant on the declaration of a mistrial," including the motions raised on Bogan's behalf during trial and defense counsel's conduct during the July 24, 2017 hearing. As discussed, defense counsel zealously maintained, on separate occasions, that the trial court was required to declare a mistrial due to its admission of highly prejudicial testimony during the trial. In fact, counsel renewed her motion for a mistrial just prior to the conclusion of trial on July 20, 2017. In addition, the record reflects that immediately following the court's declaration of a mistrial on July 24, 2017, defense counsel actively participated in the scheduling of the retrial, agreed to a tentative new trial date, requested the trial court to consider allowing the

defense to obtain an additional expert witness for retrial, and requested the trial court to thank the jury on behalf of the defense.

{¶32} Individually, each of the foregoing circumstances may not equate to a finding of consent. Collectively, however, we can only view Bogan's acceptance of the court's judgment as consensual, intentional, and consistent with defense counsel's repeated requests for a mistrial during trial, albeit on different grounds. This was more than a case of uninformed silence.

{¶33} We recognize that defense counsel actively raised concerns with the trial court's declaration of a mistrial during the July 25, 2017, and August 20, 2017 hearings. However, we do not find Bogan's subsequent objections to the trial court's judgment served to rescind the implicit consent given during the July 24, 2017 hearing. In this case, it is evident that the July 25, 2017 hearing was only held to assess defense counsel's belief that a final verdict had been rendered on Count 1 of Bogan's indictment. It did not morph into a debate on the substantive merits of the trial court's mistrial declaration until the court rejected defense counsel's final verdict argument, and after counsel became aware of the jury's preliminary not guilty verdict on Count 1. Thus, defense counsel's objections were predicated on the discovery of favorable information that was not known at the time implied consent was given. In addition, the timing of counsel's objections precluded practical consideration, as they were not raised until after the court had discharged the jury. Accordingly, the arguments posed by counsel during the July 25, 2017, and August 20, 2017 hearings have no bearing on our analysis.

{¶34} Having determined the mistrial was not declared "without defendant's consent, the presence or absence of manifest necessity is not a consideration." *State v. Mengistu*, 10th Dist. Franklin No. 02AP-497, 2003-Ohio-1452, ¶ 28, citing *Oregon*, 456 U.S. at 672, 102 S.Ct. 2083, 72 L.Ed.2d 416; *U.S. v. Mitchell*, 736 F.2d 1299, 1300 (9th Cir.1984) ("Where defendant

consents to a mistrial * * * the 'manifest necessity' doctrine does not come into play and as a general rule retrial is permitted because defendant himself has elected to terminate the proceedings and begin afresh"); *U.S. v. DiPietro*, 936 F.2d 6, 9 (1st Cir.1991) (manifest necessity test does not apply when defendant has effectually consented to the mistrial). Thus, we find Bogan's challenges to the trial court's finding of a manifest necessity are not determinative and do not implicate the double jeopardy protections afforded under the state and federal constitutions.

**{¶35}** Because the trial court's declaration of a mistrial was made with Bogan's implicit consent, we are unable to conclude that this is the rare or exceptional case where the protections of the Double Jeopardy Clause require the dismissal of his indictment with prejudice. *See State v. Kelly*, 8th Dist. Cuyahoga No. 101457, 2015-Ohio-1948, ¶ 25, citing *State v. Smith*, 1st Dist. Hamilton No. C-990689, 2000 Ohio App. LEXIS 5082, 19 (Nov. 3, 2000) (noting the "extremely rare" circumstances where the protections afforded by the Double Jeopardy Clause bar reprosecution following a mistrial). Accordingly, the trial court did not err in denying Bogan's motion to dismiss on double jeopardy grounds.

**{¶36}** Bogan's sole assignment of error is overruled.

**{¶37}** Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, J., CONCURS IN JUDGMENT ONLY (SEE SEPARATE OPINION);
EILEEN A. GALLAGHER, A.J., DISSENTS (SEE SEPARATE OPINION)


KATHLEEN ANN KEOUGH, J., CONCURRING IN JUDGMENT ONLY:

{¶38} I respectfully concur in judgment only. I write separately to reiterate, as both the majority and dissenting opinions make clear, that the trial court abused its discretion in declaring a mistrial when there was no manifest necessity to do so.

{¶39} Without any investigation, the trial court simply concluded that based upon "multiple communications" from the jury foreperson "of juror misconduct and bias" by Juror No. 5, a mistrial was required. The court's characterization of "multiple" communications from the foreperson is exaggerated; there were two. And even if there were multiple communications, the trial court never bothered to interview either the jury foreperson or Juror No. 5 to ascertain what the problem was, if there was indeed a problem, and even if there were some problem, whether the jury could continue deliberating. The court also did not consider whether the alternate juror could be seated if there were issues with Juror No. 5 that prevented her from deliberating with the jury.

{¶40} Furthermore, in its rush to declare a mistrial, the trial court failed to interview the jury on the record in the presence of the lawyers to determine if it had reached a verdict on any of the four counts. If the jury had reached a verdict on some but not all of the counts, the judge

could have declared a mistrial as to the counts the jury was unable to resolve but taken a verdict on the count(s) upon which the jury had reached a verdict.

{¶41} Because the trial court failed to investigate the alleged juror misconduct or consider any alternatives to a mistrial, the trial court abused its discretion in declaring a mistrial. Nevertheless, I concur in judgment only that the trial court did not err in denying Bogan's motion to dismiss on double jeopardy grounds. I disagree with the implied consent doctrine because I believe it places the defendant in a difficult if not impossible strategic position. However, in light of the federal and Ohio case law regarding implied consent cited by the majority, as well as defense counsel's apparent acquiescence to the mistrial order, I am constrained to agree that the mistrial was not declared without Bogan's consent.

{¶42} Defense counsel twice asked for a mistrial during trial and renewed the motion just prior to the conclusion of trial. Then, at the July 24, 2017 hearing before the trial court dismissed the jury, defense counsel actively engaged with the court in scheduling a new trial date, asked the court to consider allowing the defense an additional expert witness for trial, and asked the court to thank the jury on behalf of the defense. I am satisfied that defense counsel by his words and conduct affirmatively consented to the mistrial. *See, e.g., U.S. v. Smith*, 621 F.2d 350 (9th Cir.1980) (No double jeopardy bar to retrial where defense counsel asked that in discharging the jury, the court not blame the defendant because "he may see these people in other trials"; counsel responded "yes" when the court asked whether counsel's schedule would allow him to conduct a retrial within a few weeks; and counsel told the court he "had no problem" with the court resolving two evidentiary matters for retrial while they were waiting for the jury to arrive to be discharged.).

{¶43} Accordingly, I concur in judgment only.

EILEEN A. GALLAGHER. A.J., DISSENTING

{¶44} For the following reasons, I respectfully dissent from the majority opinion. I would decline to adopt the implied consent doctrine relied upon in the majority opinion. Because I find that the trial court abused its discretion in ordering a mistrial in the absence of manifest necessity, I would hold that double jeopardy bars a retrial in this case.

**I. Implied Consent**

{¶45} My principle disagreement with the majority opinion lies in the adoption of the implied consent doctrine as advanced in *State v. Jackson*, 6th Dist. Lucas No. L-89-196, 1990 Ohio App. LEXIS 1340 (April 6, 1990). While it is well established that a mistrial granted at the request of the defendant or with the defendant's consent will not operate to bar a retrial on double jeopardy grounds, the implied consent doctrine set forth in *Jackson* expands that rule to instances where an appellate court believes consent can be implied from the totality of the circumstances. The *Jackson* court cited *U.S. v. Puleo*, 817 F.2d 702 (11th Cir. 1987) for the proposition that "when a defendant has had an opportunity to object to the declaration of a mistrial and fails to do so his consent to the declaration of a mistrial may be implied." *Puleo*, at 705. *Puleo*, however, involved the declaration of a mistrial after the jury indicated that they were deadlocked, the court provided the *Allen* charge, and thereafter the jury advised the court that they were, indeed, at an impasse.

{¶46} The Second, Third and Fourth Districts have similarly adopted the implied consent doctrine. *See State v. Hittle*, 2d Dist. Miami No. 80-CA46, NO. 80-CA47, 1981 Ohio App. LEXIS 12975 (Mar. 3, 1981); *State v. Workman*, 60 Ohio App.2d 204, 208, 396 N.E.2d 777 (3d Dist.1977); *State v. Tanner*, 4th Dist. Ross No. 1256, 1986 Ohio App. LEXIS 8117 (July 24,

1986). However, I note that the Third District subsequently issued a conflicting decision where it appeared to reject the doctrine of implied consent. *State v. Dewald*, 3d Dist. Seneca No. 13-82-10, 1982 Ohio App. LEXIS 14924 (Nov. 9, 1982).

{¶47} I would not adopt the implied consent doctrine and would certify a conflict between the present case and the above cited decisions. Consistent with my view, I note that this court declined an opportunity to adopt the implied consent doctrine in *State v. Marshall*, 2014-Ohio-4677, 22 N.E.3d 207 (8th Dist.). In *Marshall*, this court considered a trial court's sua sponte declaration of a mistrial. We noted that the defendant had been denied relief under habeas corpus by the United States District Court for the Northern District of Ohio in part because he had "impliedly consented to the mistrial by failing to object." *Id*. at ¶ 15, citing *Marshall v. Ohio*, 443 F.Supp. 2d 911 (N.D.Ohio 2006). Despite acknowledging this fact, the panel in *Marshall* did not deny the appeal under the implied consent doctrine and, instead, considered the trial court's decision to declare a mistrial under the manifest necessity standard. *Id*. at ¶ 18-40.

{¶48} In *State v. Glover*, 35 Ohio St.3d 18, 517 N.E.2d 900 (1988), the Ohio Supreme Court did not apply the implied consent doctrine in an instance where the defendant failed to object to a sua sponte mistrial declaration. *Id*. at 20. As in *Marshall*, the *Glover* court considered the mistrial declaration under the manifest necessity standard.

{¶49} In my view, the implied consent doctrine places an undue burden on a defendant to make an immensely important, strategic decision immediately and without warning. The doctrine only becomes relevant in instances where the trial court improperly grants a mistrial. As applied to cases such as the one presently before us, when faced with a sua sponte mistrial declaration, announced without warning, the implied consent doctrine shifts the onus to the

defendant to instantaneously evaluate his interest in being tried by the present jury as opposed to facing a new trial. The doctrine provides no room for an informed calculation on the part of the defendant but rather terminates his double jeopardy rights if he does not immediately object.

{¶50} Conversely, the implied consent doctrine absolves the trial court of any responsibility for failing to follow procedural safeguards set forth under the law and for erroneously declaring a mistrial. The doctrine is simply incompatible with a power that "ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes[.]" *U.S. v. Perez*, 22 U.S. 579, 580, 6 L.Ed. 165 (1824).

{¶51} Therefore, I would not find the doctrine of implied consent to bar Bogan's double jeopardy rights in this instance.

**II. Manifest Necessity**

{¶52} I would also find that the trial court erred in declaring a mistrial without manifest necessity. "[T]he question of whether, under the double jeopardy clause, there can be a second trial, after a mistrial has been declared, sua sponte, depends on whether (1) there is a 'manifest necessity' or a 'high degree' of necessity for ordering a mistrial, or (2) the ends of public justice would otherwise be defeated.'" *Glover*, 35 Ohio St.3d at 19, 517 N.E.2d 900, quoting *State v. Widner*, 68 Ohio St.2d 188, 189, 429 N.E.2d 1065 (1981).

{¶53} "Manifest necessity" means a "high degree" of necessity must exist before a mistrial may properly be declared. However, it does not require a showing that a mistrial was "absolutely necessary" or that there was no other alternative but to declare a mistrial. *Arizona v. Washington*, 434 U.S. 497, 511, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978).

{¶54} There is no "mechanical formula" for determining what constitutes a "manifest necessity" for a mistrial: "[T]he manifest-necessity standard 'abjures the application of any

mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial.'" *State v. Gunnell*, 132 Ohio St.3d 442, 2012-Ohio-3236, 973 N.E.2d 243, ¶ 27, *quoting Illinois v. Somerville*, 410 U.S. 458, 462, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). What constitutes a manifest necessity for a mistrial is, therefore, left to the discretion of the trial court to be decided on a case-by-case basis, taking into account all the relevant circumstances. This approach is "in recognition of the fact that the trial judge is in the best position to determine whether the situation in his [or her] courtroom warrants the declaration of a mistrial." *Glover*, 35 Ohio St.3d at 19, 517 N.E.2d 900. However, "'the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.'" *Gunnell* at ¶ 26, quoting *Perez*, 22 U.S. at 580, 6 L.Ed. 165. "A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened, unless the substantial rights of the accused or the prosecution are adversely affected * * * ." *State v. Reynolds*, 49 Ohio App.3d 27, 550 N.E.2d 490 (2d Dist.1988), paragraph two of the syllabus. The granting of a mistrial is necessary only when "a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991).

**{¶55}** The trial court's mistrial declaration is reviewed to determine if the trial judge exercised "sound discretion in determining whether juror bias existed and whether it could be cured." *Gunnell* at ¶ 29.

> [A] trial judge's determination of possible juror bias should be given great deference only upon the appellate court's satisfaction that the trial judge exercised sound discretion in determining whether juror bias existed and whether it could be cured. * * * [T]he mere specter of bias is [not] a manifest necessity that warrants mistrial. * * * [A]lthough a trial judge's determination of juror bias is entitled to great deference, it must be predicated on the judge's proper discretion in hearing the case. Mere supposition, surmise, and possibility of prejudice are not sufficient.

*Id*. at ¶ 29, 31.

**{¶56}** In determining whether a mistrial is necessary, the exercise of sound discretion generally requires that a trial judge allow both parties to state their positions on the issue, consider their competing interests, and explore reasonable alternatives, if any, before declaring a mistrial. *N. Olmsted v. Himes*, 8th Dist. Cuyahoga Nos. 84076 and 84078, 2004-Ohio-4241, ¶ 44, citing *Ross v. Petro*, 515 F.3d 653, 661 (6th Cir.2008). A trial court must act "rationally, responsibly, and deliberately" in determining whether to declare a mistrial. *Gunnell* at ¶ 33. However, a trial court's failure to make an explicit finding of "manifest necessity" does not render a mistrial declaration invalid, as long as the record provides sufficient justification for the ruling. *Washington*, 434 U.S. at 516-517, 98 S.Ct. 824, 54 L.Ed.2d 717.

**{¶57}** I would find, in this case, that the trial court abused its discretion in declaring a mistrial after determining, through its journal entry, that it was necessary "based upon the behavior of Defendant and Juror 5." As the majority opinion concedes, it is clear from the record that the trial court failed to comply with any of the procedural safeguards set forth in *Hines*, *Ross* and *Washington*.

**{¶58}** The trial court ruled that "[d]efendant and Juror 5's behavior permeated so deeply into the trial and jury deliberations ... that the integrity of the proceeding was compromised and that there was no way to properly cure the problem, thereby ultimately resulting in the necessity of a mistrial."

**{¶59}** The trial court's ruling is inconsistent with that which did occur during the trial of this case and is unsupported by the record.

**{¶60}** Throughout the course of the trial, the trial court repeatedly chastised Bogan for his contumacious behavior in open court and before the jury.

{¶61} In fact, during jury selection, the trial court indicated that she would "gag him" (the appellant) if he attempted to disrupt the proceedings. The record reflects that "Mr. Bogan has resorted in front of the jury to jumping out of his seat, yelling at the top of his lungs, throwing his hands around, grabbing his binder that's full of documents and yelling and screaming about he was innocent, that he was being railroaded that Cuyahoga County was corrupted and totally disrupted those proceedings.

{¶62} Irrespective of that, the trial court never took action against the defendant other than repeated verbal admonishments and a request that his trial counsel "control him."

{¶63} The trial court could have, at any time, had him removed from the courtroom, placed into a holding facility and made arrangements for him to otherwise participate in the trial from a remote location or even taken the most extreme measure of gagging him in the courtroom.

{¶64} This was never done.

{¶65} Additionally, while the jury was deliberating, the court conducted a hearing wherein a court employee was questioned. Apparently this court employee, who was merely an observer during the trial, contacted the assistant prosecuting attorney and reported observations which she had made during the trial. She testified that on one occasion she "was sitting on the second row watching the defendant watching the jurors. I saw Clarence Bogan mouth words over as he was looking over this way to somebody. . . . And then I saw the juror, Juror No. 5, watching the defendant and smile back. That's it." She denied seeing any other communication between Juror No. 5 and the defendant.

{¶66} At the conclusion of the testimony of that court employee, the court stated "[a]fter listening carefully I don't think it rises to the same level we had initially thought that it did. I was under the impression that they communicated. I know and I've indicated to counsel at the

sidebar that he was making faces and trying to communicate with me.  I asked counsel to correct it and I think they did.   So if it was that same thing I don't think it rises to a level where we need to take it any further."

{¶67} Also, during deliberation the trial court received a communication from the jury foreperson which she shared with counsel.  The communication read "[a] number of jurors, including myself as foreman, are questioning the competency of Juror # [sic] 5 to deliberate and render a verdict."   The trial court then provided, again, to the jury the standard instruction on conduct during deliberation as to consulting with one another, considering each other's views and deciding the case for themselves after discussion and consideration with the other jurors.

{¶68} The record is devoid of any investigation by the court, with or without counsel, through questioning of the jury foreperson or the juror about whom a complaint was made, as to what the perceived problem was or, if in fact, other jurors were aware of the foreperson's communication on this issue.   We know not what the issue was, if it was a personality conflict, if that juror was merely maintaining her opinion of the case or if there was a legal competency issue.   The trial court should have explored the alleged problem.

{¶69} Further, we do not know whether an alternate juror was available to participate in deliberations if, in fact, Juror No. 5 needed to be removed from the case as the record is devoid of any discharge of the jury or any record that attempts to contact an alternate were made.

{¶70} Notwithstanding all of the above, the trial court did not act until that time that the jury sent forth another written communication which read "[w]e are at an impasse on three out of the four counts.   Further deliberations would be fruitless.   (This morning, the one juror crossed out her name from the verdict form on Count 4, so we no longer have a verdict on that count.)"

**{¶71}** The court did not offer a *Howard* charge. It merely informed counsel that "at this point because of the numerous allegations of jury misconduct as well as the difficulty with the jury the court is going to declare a mistrial."

**{¶72}** There is no identifiable jury misconduct on the record. An allegation was made by a court employee of communication between a juror and the defendant and the court discounted it after hearing the testimony. In fact, the prosecuting attorney who examined this person on the record indicated that "So I misunderstood. I thought you had said you saw her say something." On these facts I cannot say that manifest necessity existed to support a sua sponte mistrial declaration. The trial court ignored the relevant procedure and substituted supposition and speculation for appropriate investigation in concluding that juror misconduct necessitated a mistrial.

**{¶73}** I would find that the trial court abused its discretion in declaring a mistrial and that further prosecution of the charges in this case should be barred by double jeopardy.