[Cite as *State v. Spivey*, 2024-Ohio-4492.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                    :

     Plaintiff-Appellee,     :

                               No. 113559

     v.                              :

DAVID SPIVEY,                    :

     Defendant-Appellant.   :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 12, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-675401-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Sarah E. Hutnik, Assistant Prosecuting Attorney, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and Erika B. Cunliffe, Assistant Public Defender, *for appellant*.

MICHAEL JOHN RYAN, P.J.:

{¶ 1} Defendant-appellant, David Spivey, appeals the trial court's denial of his motion to dismiss based on double jeopardy after the court declared a mistrial. After a careful review of the facts and the law, we affirm.

{¶ 2} Spivey was charged in an 11-count indictment stemming from the homicides of Dominique King and Delvont'e King, which occurred on July 30, 2020. Spivey was charged with two counts of aggravated murder, in violation of R.C. 2903.01(A) (Counts 1 and 2); two counts of murder, in violation of R.C. 2903.01(A) (Counts 3 and 4); two counts of murder, in violation of R.C. 2903.02(B) (Counts 5 and 6); two counts of felonious assault, in violation of R.C. 2903.11(A)(1) (Counts 7 and 8); two counts of felonious assault, in violation of R.C. 2903.11(A)(2) (Counts 9 and 10); and one count of having weapons while under disability, in violation of R.C. 2923.13(A)(2) (Count 11).[1] The aggravated murder, murder, and felonious assault counts contained one- and three-year firearm specifications. Trial by jury began on November 6, 2023; the facts of the case as presented at trial are not pertinent to this appeal.

{¶ 3} One juror was excused due to illness during the four-day trial, and an alternate took her place. On Thursday, November 9, 2023, the jury began its deliberations. About two hours into deliberations, the jury delivered a note to the bailiff asking three questions about the evidence presented and the trial exhibits.

---

[1] Count 11 was tried to the bench, and the trial court declared a mistrial as to Count 11. Spivey does not challenge that decision; therefore, our analysis excludes that count.

The court delivered a response over Spivey's objections. The jury was released at the end of the day.[2] On Sunday, November 12, 2023, Spivey filed a motion for a mistrial arguing that the trial court's responses to the jury's questions prejudiced him. The trial court eventually denied the motion as moot.

{¶ 4} The jury resumed deliberations on Monday, November 13, 2023. That morning, the trial court excused another juror, based on the juror's inability to continue service due to a work commitment. Thereafter, a third juror was excused based on her feeling she could no longer serve as a juror because a relative of hers was identified during the voir dire process. Both of the excused jurors were replaced by alternates, and the trial court instructed the jury to restart deliberations from the beginning. At the end of the day, the jury sent a note to the court's bailiff, which stated, "We have a hung jury. We need to know next step." The jury was sent home for the evening and told to come back the next day to continue deliberations.

{¶ 5} The jury resumed deliberations on Tuesday, November 14, 2023. The jury sent another note to the court, asking for the testimonies of several witnesses. The court informed the jury, through written correspondence, that it could have a transcript of the witnesses' testimonies prepared, but the transcript would not be ready until Friday. The court asked if the jury wished to wait for the transcripts. The jury continued deliberations without providing a response regarding the transcripts.

---

[2] Veterans Day was observed on Friday, November 10, 2023, and the courthouse was closed.

{¶ 6} Later in the day, the jury sent two additional notes to the court. The first note stated: "[Juror 20] wants to be excused. He feels there has been juror misconduct." The second note stated:

> Other jurors feel as though we cannot reach a unanimous verdict. We have unanimously voted not guilty on Counts 1, 2, 3 and 4, 7 and 8. Majority of this jury [pool] has concerns about a couple of jurors not abiding by the charges that we are given and the laws pertaining to deliberation it was based on speculations and biases rather than the facts and evidence that we were presented . . . . What are we supposed to do?

{¶ 7} The court noted, on the record, that this was the second time the jury had told the court it was deadlocked. The court indicated that if in fact the jury was unanimous on several of the counts, the court would take the verdict on those counts and declare a mistrial as to the other counts. The State indicated its concern that the verdicts were tainted by the alleged juror misconduct.

{¶ 8} In addition to the two aforementioned notes, Juror No. 20 sent a personal note to the court asking to be excused due to juror misconduct. The court determined that it would question both Juror No. 20 and Juror No. 1, the jury foreperson.

{¶ 9} The court brought Juror No. 20 into the courtroom, outside the presence of other jurors. Juror No. 20 informed the court that the jury had reached unanimous not guilty verdicts on Counts 1-4, 7, and 8. Juror No. 20 stated that he had witnessed "misconduct" and that any verdicts on any additional counts would be unfair. Upon further questioning, Juror No. 20 indicated that multiple jurors were not following instructions. The court inquired as to whether Juror No. 20

believed that replacing him with an alternate juror would still result in tainted verdicts. Juror No. 20 stated that it would.

{¶ 10} The court stated:

> Oftentimes, when a jury sends out a note basically saying we can't agree, I would instruct them basically saying take a step back, examine your positions, with the aim of making a decision if you can. Words to that effect. Here, if you're convinced that any further unanimous decisions will be infected by something other than the evidence and reasonable inferences from it, then I would not be inclined to have you continue delibera[tions].

{¶ 11} The State inquired about the timing of the alleged misconduct. Juror No. 20 stated that the misconduct occurred immediately before a straw vote was taken, during which the jury unanimously voted not guilty on Counts 1-4, 7, and 8. Juror No. 20 stated this unanimous vote on Counts 1-4, 7, and 8 were "tally" votes, and the jury did not sign any verdict forms. The juror and the court had the following conversation regarding the voting process and the verdict forms:

> Juror No. 20: Those signatures were acquired — this was a tally vote to understand — to understand essentially the headcount, if you will, for the verdict. It was not an official. It was just to understand who was where and to understand how to continue discussion and deliberation.

> Court: Let me ask you this. Maybe I misinterpreted the note that the foreperson sent. The foreperson says ["]we have unanimously voted not guilty on Counts 1 and 2, 3 and 4, 7 and 8["]. Have you in fact though completed verdict forms with all signatures for those counts.

> Juror No. 20: We have not.

{¶ 12} Juror No. 20 explained that one juror felt it was necessary to pause deliberations, give a speech, and then have the jury do "a headcount vote." Juror No. 20 explained:

> Okay. So before the jury's last tally of the day on [November 13, 2023], a juror stopped the process to give an emotional speech stating, quote, "before we vote we need to address the inherent biases in this room. I have noticed a clear difference in how non-African-American jurors have voted and certain statements have been made during deliberations that proved there is bias.["] . . . Said juror continued their statement, adding that society has created a predisposition to consider any African-American within the vicinity of a crime to be automatically involved and most likely guilty and that has factored into jurors' decisions.

{¶ 13} Juror No. 20 reiterated that the alleged misconduct occurred immediately before the straw vote in which the jurors voted not guilty on Counts 1-4, 7, and 8, and were unable to reach unanimous verdicts on counts 5, 6, 9, and 10. Juror No. 20 told the court that he believed that the speech by the juror rose to the level of misconduct because "it introduced evidence outside of what was presented at trial."

{¶ 14} Juror No. 20 was released, and the State moved for a mistrial. Defense counsel opined his belief that the situation did not rise to the level of juror misconduct and asked the court to give the jury a *Howard*[3] charge. The court asked defense counsel if he wished the court to bring out the remaining jurors to ask if they

---

[3] In *State v. Howard*, 42 Ohio St.3d 18 (1989), the Ohio Supreme Court approved a supplemental charge to be given to juries deadlocked on the question of conviction or acquittal. *Id.* at paragraph two of the syllabus.

had been influenced by the one juror's comments.  Defense counsel replied, "no," and suggested the court question Juror No. 1, the jury foreperson.

{¶ 15} The court then brought in Juror No. 1 and asked if the juror thought unanimous verdicts would be possible with additional time and a break.  Juror No. 1 stated that unanimous verdicts would not be possible, even with a break and additional time.  The court asked Juror No. 1:  "Is it your sense that any verdicts that might come out of this jury after this point will be based on — may be based on something other than the evidence and the reasonable inferences from it and the law that you have heard?"  Juror No. 1 responded:  "Yes, I do feel that way.  I do feel as though there are certain juror members that are not looking and not applying the law and the jury instructions that you provided and that I have read aloud.  They're not applying that."  Juror No. 1 stated that two or three of the jurors were basing their opinion on something "other than the evidence."  Juror No. 1 said this conclusion was supported by the jurors' "words" and "actions."  Juror No. 1 confirmed that no verdict forms had been signed.

{¶ 16} Thereafter, the court stated that it was declaring a "non-unanimous jury." Defense counsel objected.  The court's journal entry granting a mistrial stated that the jurors were unable to unanimously agree on a verdict on any and all counts and the court declared a mistrial as to each count.

{¶ 17} On December 4, 2023, defense counsel filed a motion to dismiss on double jeopardy grounds, which the trial court denied.  This appeal follows.

{¶ 18} Spivey's sole assignment of error states:

The trial court's decision to grant a mistrial on counts where the record makes clear the jury had reached a unanimous judgment of acquittal was unreasonable and any retrial on those charges would violate the prohibition against double jeopardy under the state and federal constitution.

{¶ 19} The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, and Article I, Section 10 of the Ohio Constitution protect a criminal defendant against repeated prosecutions for the same offense. *State v. Bogan*, 2018-Ohio-4211, ¶ 21, citing *Oregon v. Kenn*edy, 456 U.S. 667, 671 (1982). The policy underlying this protection is to ensure that

"the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him [or her] to embarrassment, expense and ordeal and compelling him [or her] to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he [or she] may be found guilty."

*Bogan* at *id.*, citing *U.S. v. Jorn*, 400 U.S. 470, 479 (1971).

{¶ 20} "Appellate courts apply a de novo standard of review when reviewing the denial of a motion to dismiss an indictment on the grounds of double jeopardy." *Bogan* at ¶ 20, citing *State v. Anderson*, 2016-Ohio-5791, ¶ 20. But when the dismissal motion is based on a challenge to a trial court's underlying declaration of a mistrial, we apply an abuse-of-discretion standard of review to that part of our analysis. *Bogan* at *id.*, citing *State v. Carter*, 2016-Ohio-5371 (4th Dist.).

{¶ 21} In a case such as this one, where a mistrial has been declared without the defendant's request or consent, double jeopardy will not bar a retrial if (1) there

was a manifest necessity for ordering a mistrial; or (2) the ends of public justice would otherwise be defeated. *Bogan* at ¶ 23, citing *State v. Widner*, 68 Ohio St.2d 188, 189 (1981). "[A] mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened, unless the substantial rights of the accused or the prosecution are adversely affected . . . ." *State v. Reynolds*, 49 Ohio App.3d 27 (2d Dist.), paragraph two of the syllabus. The granting of a mistrial is necessary only when "a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118 (1991).

{¶ 22} "'Manifest necessity' means a 'high degree' of necessity must exist before a mistrial may properly be declared. However, it does not require a showing that a mistrial was 'absolutely necessary' or that there was no other alternative but to declare a mistrial." *Bogan* at *id.*, quoting *Arizona v. Washington*, 434 U.S. 497, 511 (1978). Additionally, there is no mechanical formula for determining what constitutes a "manifest necessity"; courts have found that the standard "abjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial [due to] the varying and often unique situations arising during the course of a criminal trial." *State v. Gunnell*, 2012-Ohio-3236, ¶ 27, quoting *Illinois v. Somerville*, 410 U.S. 458, 462 (1973).

{¶ 23} Ohio courts have held that when considering whether there is a manifest necessity for a mistrial, a court is to consider the totality of the circumstances surrounding a case. *State v. Bush*, 1991 Ohio App. LEXIS 4746, *11 (10th Dist. 1991), citing *State v. Abboud*, 13 Ohio App.3d 62 (8th Dist. 1982).

Therefore, what constitutes a manifest necessity for a mistrial is decided on a case-by-case basis considering the totality of a case's circumstances.

{¶ 24} "'While other situations have been recognized [. . .] as meeting the "manifest necessity" standard, the hung jury remains the prototypical example.'" *State ex rel. Bevins v. Cooper*, 2014-Ohio-544, ¶ 7, quoting *Oregon v. Kennedy*, 456 U.S. 667, 672 (1982), citing *Arizona v. Washington*, 434 U.S. 497, 509 (1978). Reflecting this exception, R.C. 2945.36(B) allows a trial court to discharge a jury without prejudice to the prosecution when there is no probability of agreement by the jury. *Cooper* at *id.*

{¶ 25} Spivey argues that the trial court erred in granting a mistrial on six of the counts because the jury had unanimously reached acquittals on those counts. Spivey concedes, however, that it was "entirely proper for the trial court to declare a mistrial on counts where the jury professes to be deadlocked." Spivey does not claim that the trial court erred in declaring a mistrial on Counts 5-6 and 9-10. Therefore, our analysis will concern only those counts Spivey argues the jury returned a verdict on. According to Spivey, the court was mandated to accept the verdict on those counts and, therefore, double jeopardy barred retrial on those counts.

{¶ 26} Spivey claims that the court incorrectly told Juror No. 1 that the jury had to be unanimous on all counts, rather than unanimous on some of the counts, before the jury could execute a verdict form.

{¶ 27} During questioning by the prosecutor, Juror No. 1 was asked if the jury had executed the verdict forms:

Prosecutor: You have not signed any verdict forms, correct?

Juror No. 1: Correct.

Prosecutor: You just took a straw poll or a headcount vote?

Juror No. 1: Yes. Because from my understanding and — that unless we could all unanimously agree, we weren't supposed to fill those out. Was that incorrect?

Court: No, you have to be unanimous.

{¶ 28} This exchange does not show that the trial court expressly told the juror that the jury had to be unanimous as to all counts before executing verdict forms; therefore, we reject Spivey's claim.

{¶ 29} Both Juror No. 1 and Juror No. 20 were questioned regarding the not guilty votes. Juror No. 1 confirmed that no verdict forms had been signed and Juror No. 20 stated that the verdict forms were never completed and that the vote was essentially a tally vote to give the jurors an indication of where they stood; it was not a formal vote:

Juror No. 20: Those signatures were acquired — this was a tally vote to understand — to understand essentially the headcount, if you will, for the verdict. It was not an official. It was just to understand who was where and to understand how to continue discussion and deliberation.

{¶ 30} Although Spivey argues that the process by which the jury voted was binding so that the court should have entered acquittals on six of the counts, we decline to agree. Crim.R. 31(A) states that a "verdict shall be unanimous. It shall be in writing, signed by all jurors concurring therein, and returned by the jury to the judge in open court." It is clear from the court and parties' questioning of the jurors

that no formal vote had been taken and no verdict forms were signed. Instead, the jurors paused mid-deliberations to conduct a preliminary vote. Therefore, the trial court did not err in failing to enter judgment of acquittals on Counts 1-4, 7, and 8, and double jeopardy does not bar retrial on those counts.

{¶ 31} Next, we will briefly discuss the State's argument that the trial court's reasoning for declaring a mistrial was because of juror misconduct, specifically the court's declaring a mistrial "based on juror misconduct for considering information outside of the law, the record, jury instructions, and the introduction of racial bias into deliberations." As Spivey points out, the trial court's basis for declaring a mistrial was the jury's inability to reach a verdict. The trial court never indicated it was declaring a mistrial based on jury misconduct. Although the alleged misconduct certainly could have factored into the trial court's analysis of the totality of the case's circumstances, the trial court's only stated reason was that the jury was deadlocked on all counts.

{¶ 32} During the court's discussion with the parties regarding a possible mistrial, defense counsel suggested the court give the jury a *Howard* charge. The State responded that the trial court could not give the jury a *Howard* charge because any verdict the jury reached would be "the result or the product of misconduct." In dismissing the case, the trial court stated: "So based on my understanding of what's happening in the jury room, I am going to declare this a non-unanimous jury, sometimes referred to as a hung jury. And I am going to excuse the jury." The court continued that it would have the bailiff inform the jury that their service was no

longer needed, unless the parties preferred the court to do it in open court. The parties declined to have the trial court bring the jury into open court for the dismissal.

{¶ 33} R.C. 2945.36(B) provides that "the trial court may discharge a jury without prejudice to the prosecution . . . [b]ecause there is no probability of such jurors agreeing." Although the statute does not prescribe how a trial court must reach this conclusion, i.e., it does not require that a *Howard* charge be given to the jury prior to the court declaring a mistrial, Ohio courts have found that a trial court may abuse its discretion in sua sponte declaring a mistrial when other less drastic alternatives are easily available. *State v. Davis*, 2011-Ohio-2387, ¶ 47 (8th Dist.).

{¶ 34} "'In determining whether a mistrial is necessary, the exercise of "sound discretion" generally requires that a trial court (1) allow both parties to state their positions on the issue, (2) consider their competing interests, and (3) explore reasonable alternatives, if any, before declaring a mistrial.'" *State v. Taylor*, 2023-Ohio-928, ¶ 39 (8th Dist.), quoting *Bogan*, 2018-Ohio-4211, at ¶ 25; *Olmsted v. Himes*, 2004-Ohio-4241, ¶ 44 (8th Dist.). "'A trial court must act "rationally, responsibly, and deliberately" in determining whether to declare a mistrial.'" *Taylor* at *id.*, quoting *Bogan* at *id.* However, a trial court's failure to make an explicit finding of "manifest necessity" does not render a mistrial declaration invalid, as long as the record provides sufficient justification for the ruling. *Washington*, 434 U.S. at 516-517.

{¶ 35} The record reflects that the trial court heard competing positions from the State and the defense. The State reasoned that further deliberations would not prove fruitful because Juror No. 1 and Juror No. 20 felt that the jury had been tainted by comments made by another juror. According to the State, a *Howard* charge would not "work" because the offending comments had already been made. The defense countered that the comments made by the offending juror did not amount to racial bias and requested a *Howard* charge. The court stated that it would consider both arguments.

{¶ 36} Although the court did not explicitly state that it considered reasonable alternatives to declaring a mistrial, the parties both stated their positions regarding the trial court giving the jury a *Howard* charge and the court stated it was taking the parties' arguments into consideration. Thus, we can presume that the trial court considered at least that alternative and determined it insufficient. In addition, although the defense objected and the trial court did not state any alternatives to a mistrial on the record, "this is not a case in which the parties were afforded no opportunity to state their respective positions or where an adequate alternative remedy was readily apparent." *See State v. Davis*, 2021-Ohio-2311, ¶ 25 (8th Dist.) (holding that the trial court did not err in declaring a mistrial where the court held a lengthy colloquy with the parties and where no alternative remedy to a mistrial was apparent).

{¶ 37} Here, the court afforded the parties the full opportunity to state their respective positions and be heard. Defense counsel declined to have each individual

juror questioned regarding whether he or she had been influenced by the allegedly improper statements. Thus, because two jurors stated that any verdict would be tainted by the juror's statements, and defense counsel declined to hear from each juror regarding their respective positions, the court presumably concluded that no adequate alternative remedy to a mistrial was available.

{¶ 38} Finally, we again note that Spivey contests only the trial court's decision to declare a mistrial on Counts 1 – 4, 7, and 8, and argues that the jury had reached a verdict on those counts so double jeopardy precludes retrial. We are reminded that the discretion lies with the trial court on its reasons for declaring a mistrial and that a trial court is to consider the totality of the circumstances. Based on the facts of this case and the arguments presented, we decline to find that the trial court abused its discretion in finding the jury was deadlocked and a mistrial was necessary.

{¶ 39} The sole assignment of error is overruled.

{¶ 40} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MICHAEL JOHN RYAN, PRESIDING JUDGE

FRANK DANIEL CELEBREZZE, III, J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS (WITH SEPARATE OPINION)


SEAN C. GALLAGHER, J., CONCURRING:

{¶ 41} I concur with the majority's decision to affirm but do so for a different reason. Although the majority thoroughly discusses and lays out the standards for mistrials in general, a mistrial declared based on the jury's inability to reach a unanimous decision is afforded a degree of deference not necessarily present on the other end of the mistrial spectrum, i.e., prosecutorial misconduct. A trial court's "decision to declare a mistrial due to a hung jury is fairly easily viewed as justified and should be afforded a high degree of deference." *State v. Gunnell*, 2012-Ohio-3236, ¶ 27, citing *Arizona v. Washington*, 434 U.S. 497, 509 (1978).

{¶ 42} In this case, the trial court declared a mistrial based on the jury's inability to reach a verdict. That type of mistrial is not an event that terminates jeopardy. *State v. Ferricci*, 2019-Ohio-994, ¶ 8 (8th Dist.), citing *Richardson v. United States*, 468 U.S. 317 (1984). Spivey's argument focuses on his perception that the jury may have been able to return verdicts on some of the counts based on preliminary voting. However, in *Blueford v. Arkansas*, 566 U.S. 599 (2012), the

Supreme Court addressed this issue, concluding that a jury's preliminary agreement on some counts is not tantamount to an acquittal for the purposes of the Double Jeopardy Clause. *Id.* at 606. The jury in *Blueford* indicated to the trial court that they were deadlocked on some of the counts, although that jury had preliminarily voted to acquit on others including the capital murder charge. *Id.* The trial court nonetheless declared the jury hung and declared a mistrial on all counts. *Id.*

{¶ 43} Before the subsequent trial, the defendant claimed that double jeopardy principles precluded retrial on the counts for which the jury indicated they had voted to acquit. As the Supreme Court noted, however, "[w]hen the foreperson told the court how the jury had voted on each offense, the jury's deliberations had not yet concluded[,]" and therefore, no verdict on those counts was entered. Because it was "possible for [the defendant's] jury to revisit the offenses of capital and first-degree murder, notwithstanding its earlier votes[,]" any preliminary reporting of the potential decision "prior to the end of deliberations lacked the finality necessary to amount to an acquittal on those offenses, quite apart from any requirement that a formal verdict be returned or judgment entered." *Id.* at 606-608. As the Supreme Court concluded, a trial court is not required to "consider any particular means of breaking the impasse — let alone to consider giving the jury new options for a verdict." *Id.* at 609, citing *Renico v. Lett*, 559 U.S. 766, 775 (2010).

{¶ 44} In this case, although the jury foreperson indicated that a preliminary vote had been taken, there was no indication that the vote was final in any sense. Spivey attempts to distinguish *Blueford* on the basis that the jury deliberated after

the preliminary vote. Even though Spivey's jury may not have deliberated after the trial court questioned the two jurors, the jury was still in the midst of deliberations after their preliminary vote was taken and there is no indication that the preliminary vote was any of the jurors' final decision. There is little distinction between this case and the situation faced in *Blueford*. The Double Jeopardy Clause does not preclude retrial on all charges in this case.

{¶ 45} For this reason, I agree with the majority's decision.