UNITED STATES of America,
Plaintiff-Appellee,

v.

Cheryl Lynne PULEO,
Defendant-Appellant.

No. 85–3287.

United States Court of Appeals,
Eleventh Circuit.

May 26, 1987.

Terrence E. Kehoe, Orlando, Fla., for defendant-appellant.

Bruce Hinshelwood, Asst. U.S. Atty., Orlando, Fla., for plaintiff-appellee.

Before ANDERSON and CLARK,

Circuit Judges, and SIMPSON *, Senior Circuit Judge.

ANDERSON, Circuit Judge:

Cheryl Lynne Puleo appeals directly from a judgment of conviction and sentence imposed in the United States District Court for the Middle District of Florida. Finding no error, we affirm.

## I. BACKGROUND

Puleo was indicted on sixty counts, twenty-five of which charged her with the misapplication of bank funds with intent to defraud in violation of 18 U.S.C. § 656, and thirty-five of which charged her with making false entries in bank documents in violation of 18 U.S.C. § 1005. In substance, the indictment alleged that Puleo conducted a paper scheme of debit and credit transactions as an employee of a federally-insured bank resulting in a loss to the bank of approximately $25,000.

In this appeal, Puleo raises four issues: (1) whether her second trial violated the Double Jeopardy Clause; (2) whether the indictment against her should be dismissed because of prosecutorial misconduct in interviewing jurors after the first trial; (3) whether her second trial was tainted because jurors with last names beginning with the letters M–Z were excluded from the jury venire; and (4) whether there was sufficient evidence to support her convictions.

## II. DOUBLE JEOPARDY

Puleo's first trial began on December 3, 1984, and lasted four days. At 3:30 p.m. on December 6th the jury began its deliberations. At 8:05 p.m. the jury sent a note to the court indicating that it had taken three votes and had been unable to reach a decision. After discussion with counsel, the trial court read to the jury a modified *Allen* charge, *see Allen v. United States*, 164

U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), and sent the jury back to deliberate. Approximately an hour and fifteen minutes later, at 9:20 p.m., the jury sent a second note that they were unable to reach a verdict. Thereafter, the court brought the jury in, briefly questioned the foreperson, and *sua sponte* declared a mistrial.

The relevant portion of the proceedings that occurred after the jury first retired to deliberate are as follows:

(At 3:30 p.m., the jury retired to commence their deliberations.)

. . . . .

(Recess)

(8:05 o'clock p.m.)

THE COURT: All right, gentlemen, at this point I've received notification from the foreperson that upon three polls of the jury that they appear to be stalemated.[1]

What I propose to do at this time is bring them in and read them the Allen Charge.

Any side anything to say for the record?

MR. HINSHELWOOD [Prosecutor]: No.

MR. ENNIS [Defense Counsel]: No, sir.

THE COURT: All right, bring the jury in.

(Jury present)

THE COURT: Ladies and gentlemen, I have one additional instruction which I would like to read to you at this time.

I know that all of you have worked hard to try to find a verdict in this case. It apparently has been impossible for you so far.

Sometimes an early vote before discussion can make it hard to reach an agreement about the case. The vote, not the discussion, might make it hard to see all sides of the case.

We have polled the jury 3 different times following our deliberations. We have reached, therefore, a stalemate. At this point, what are your recommendations?
/s/ Nathalie W. Rawlins.
Record on Appeal, vol. 1, tab 24.

---

* Judge Simpson did not participate in the decision of this case and the decision is by quorum. 28 U.S.C. § 46; Circuit Rule 3.

1. This note read:
   To the Judge;

We are all aware that it is legally permissible for a jury to disagree. There are two things a jury can lawfully do, agree on a verdict or disagree on what the facts of the case may truly be.

There is nothing to disagree on about the law. The law is as I told you. If you have any disagreements about the law, I should clear them up for you now. That should be my problem, not yours.

If you disagree on what you believe the evidence showed, then only you can resolve that conflict, if it is to be resolved.

I've only one request of you. By law I cannot demand this of you, but I want you to go back to the jury room, then taking turns tell each of the other jurors about any weakness of your own position. You should not interrupt each other or comment on each other's views until each of you has had a chance to talk.

After you have done that, if you simply cannot reach a verdict, then return to the courtroom and I will declare this case mistried and will discharge you with my sincere appreciation for your service.

You may now retire to continue with your deliberations.

(The jury again retired to continue their deliberations.)

THE COURT: All right, we will stand in recess.

(Recess)

(9:20 o'clock p.m.)

THE CLERK: Court's Exhibit number 2 is marked. The other note was marked number 1.[2]

THE COURT: Bring the jury in.

(Jury present)

THE COURT: Mrs. Rawlins, are you the foreperson of the jury?

MRS. RAWLINS: Yes, I am.

THE COURT: Have you been able to reach any verdict in this case?

MRS. RAWLINS: No, we have not, sir.

THE COURT: All right, ladies and gentlemen, it is just as much your duty to disagree as it is your duty to agree. I know that it is a difficult case and I know that you have given it your best attention.

I'll declare this case a mistrial.

Thank you very much for your time and effort in this case, and you will be dismissed.

Thank you. We will stand adjourned.

MR. ENNIS: Judge, after the jury leaves, I wonder if you could—

THE COURT: All right.

(The jury left the courtroom)

MR. ENNIS: Judge, we'd like to renew those motions previously made at the completion of the Government's case and at the completion of our case.

THE COURT: All right, the Court feels that the Government has presented a prima facie case and motions will be denied.

MR. ENNIS: Thank you.

THE COURT: Stand adjourned.

(9:25 o'clock p.m.).

Record on Appeal, vol. 4 at 2–5.

■ Puleo has a valued right to have her trial completed by the first competent tribunal to hear her case. *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). The double jeopardy provision of the Constitution protects this interest by requiring that a trial judge declare a mistrial without the consent of the defendant only after it determines that mistrial is a manifest necessity. *See United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824); *Abdi v. State of Georgia*, 744 F.2d 1500, 1503 (11th Cir.1984), *cert. denied*, 471 U.S. 1006, 105 S.Ct. 1871, 85 L.Ed.2d 164 (1985). This doctrine of manifest necessity accommodates both defendant's right to have her trial completed by the first competent tribunal and the public's interest in "fair trials designed to end in just judgments." *Wade v. Hunter*,

/s/ Nathalie W. Rawlins
Record on Appeal, vol. 1, tab 24.

---

**2.** This second note read:
  To the Judge—
    The jury has been unable to reach a verdict unanimously.

336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949); *see also Walker v. Weldon*, 744 F.2d 775 (11th Cir.1984); *United States v. Gordy*, 526 F.2d 631, 635 (5th Cir.1976).[3]

■ However, the requirement that manifest necessity be demonstrated operates, only when the trial court has declared a mistrial without the consent of the defendant. When the defendant has moved for a mistrial or consents to its declaration, the double jeopardy clause will not bar his retrial. *See United States v. Scott*, 437 U.S. 82, 93, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978); *United States v. Bobo*, 586 F.2d 355, 362 (5th Cir.1978), *cert. denied*, 440 U.S. 976, 99 S.Ct. 1546, 59 L.Ed.2d 795 (1979).

In this case where the trial judge expressed a clear intent to declare a mistrial and the defense counsel had an opportunity to object but did not, we hold that Puleo has consented to the mistrial. It has certainly never been the rule that consent need be express; indeed, consent may always be "implied from the totality of circumstances attendent on the declaration of a mistrial." *United States v. Goldstein*, 479 F.2d 1061, 1067 (2d Cir.), *cert. denied*, 414 U.S. 873, 94 S.Ct. 151, 38 L.Ed.2d 113 (1973).[4]

■ Our conclusion is supported by this court's earlier decision in *Gordy*. Though our discussion was dicta, since the defendant had made a timely objection, we recognized that the failure to object might prevent a defendant from raising a double jeopardy claim on appeal. "When the defendant ... does not object timely to the declaration of a mistrial, his double jeopardy claim may be vitiated by his consent." *Gordy*, 526 F.2d at 635 n. 1; *see also*

*United States v. Beckerman*, 516 F.2d 905 (2d Cir.1975). It simply will not do for counsel to preserve an error for appellate review without giving the trial court a reasonable opportunity to render a decision upon the same objection. Thus, we conclude that when a defendant has had an opportunity to object to the declaration of a mistrial and fails to do so his consent to the declaration of a mistrial may be implied.

■ Puleo's argument that she had no opportunity to object is unavailing. When the trial judge first became aware that the jury was deadlocked and was unable to come to a verdict, he indicated to counsel his intention to give a modified *Allen* charge. As part of that charge, he expressly commanded the jury that "if you simply cannot reach a verdict, then return to the courtroom and I will declare this case mistried and will discharge you." *See* text *supra*. Subsequently, the court received and entered as court's exhibit 2 the jury's second note to the judge reporting a deadlock. When the court then asked to have the jury return to the courtroom, defense counsel must have been fully aware that the court intended to declare a mistrial. Despite this forewarning, Puleo's counsel did not object. Indeed, even as the jury was departing, defense counsel renewed several other motions, but said nothing regarding the mistrial.

In light of the foregoing, we must reject appellant Puleo's double jeopardy claim. By failing to timely object to the declaration of a mistrial, she has vitiated by her consent any double jeopardy claim she might have.[5]

### III.  OTHER ISSUES

■ Puleo also challenges her conviction on the ground that her second trial was

---

**3.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

**4.** We acknowledge that our holding goes a step farther than *Goldstein*. *Id.* at 1066 n. 11 (concluding that a defendant's failure to object is only "one of the several probative factors ... from which consent may be implied"). For the

reasons set out in the text, we hold that consent may be implied where the trial court's intent to declare a mistrial is clear, and the defense has an opportunity to object, but does not.

**5.** Our resolution of this issue makes it, of course, unnecessary to determine whether or not manifest necessity existed which would have supported the trial court's declaration of a mistrial even over a timely objection by defendant.

tainted because the Assistant United States Attorney who prosecuted both trials discussed the case with two jurors from the first trial. It is apparent that, following the first trial, the prosecution interviewed these jurors in an effort to improve his presentation of the case during the retrial. We agree with Puleo that such conduct represents a serious breach of ethics on the part of the Assistant United States Attorney. *See* Fla.Bar Code of Prof.Resp. DR 7–108(D); *cf. Florida Bar v. Peterson,* 418 So.2d 246 (1982) (communication with jurors warrants public reprimand and one-year probation). However, Puleo was provided ample opportunity, prior to the second trial, to demonstrate that these contacts had prejudiced her case. *See* Record on Appeal, vol. 5 at 18–24. Puleo completely failed to demonstrate any actual prejudice. In the absence of such a demonstration, we do not think that the prosecutor's interview of jurors following the first trial so impugned or distorted the fairness and integrity of the second trial as to warrant dismissal of the indictment. *See United States v. Kepreos,* 759 F.2d 961, 967–68 (1st Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 227, 88 L.Ed.2d 227 (1985).

■ Puleo's contention that her trial was tainted because jurors with last names beginning with the letters M–Z were excluded from the jury is also without merit. While we do not approve this practice, such an action does not systemically exclude a distinctive group of the community. *See United States v. Blair,* 493 F.Supp. 398, 410 (D.Md.1980), *aff'd on other grounds,* 665 F.2d 500 (4th Cir.1981); *Krause v. Chartier,* 406 F.2d 898, 901 (1st Cir.1968), *cert. denied,* 395 U.S. 960, 89 S.Ct. 2102, 23 L.Ed.2d 747 (1969).

Appellant's contention that there was insufficient evidence to support her conviction is without merit and warrants no discussion.

## IV. CONCLUSION

For the foregoing reasons, appellant's conviction and sentence are

AFFIRMED.