[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 11, 2010
JOHN LEY
CLERK

No. 09-13138
Non-Argument Calendar

_____

D. C. Docket No. 07-00203-CR-T-27-MAP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ADRIAN LORENZO THOMAS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 11, 2010)

Before BIRCH, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Adrian Lorenzo Thomas appeals his convictions and sentence of 294 months

of imprisonment for possession with the intent to distribute 5 grams or more of cocaine base, 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii), and cocaine hydrochloride, id. §§ 841(a)(1), (b)(1)(C). Thomas appeals the denial of his motion to suppress, the admission of tape recorded conversations between him and a confidential informant, the denial of his motion for a mistrial, and the reasonableness of his sentence. We affirm.

## I. BACKGROUND

We divide our discussion of the background into three parts. First, we discuss the events that led to Thomas's indictment. Second, we discuss Thomas's challenges to the admission of evidence and his trial. Third, we discuss Thomas's sentencing proceedings.

### A. Thomas's Misconduct and His Indictment

On March 7, 2005, Sean Bell and Nathan Sanders, officers of the Tampa Police Department, arrested a woman named Darlene while executing a search warrant. Darlene agreed to cooperate with the officers and provided information that a man named AD would sell her one half of an ounce of cocaine base. Darlene described AD as a dark-skinned male of medium build, and Darlene said that AD drove a Lexus sport utility vehicle that was bronze. Darlene told the officers that she had purchased cocaine from AD in the past, AD visited regularly the Sulphur

Springs neighborhood of Tampa, and AD associated with a gang called the Drak Boys.

Darlene's description of AD matched that of a man Officer Bell knew as Adrian Thomas. Officer Bell knew that Thomas used the nickname AD, was a member of the Drak Boys gang, and drove a Lexus sport utility vehicle that was silver. When Officer Bell showed Darlene a picture of Thomas, Darlene identified Thomas as AD.

Officer Bell instructed Darlene to call Thomas, and the officer tape recorded two telephone conversations in which Darlene agreed to pay Thomas $435 for one half of an ounce of cocaine base at a gas station. Officer Bell also tape recorded other calls between Darlene and Thomas in which Thomas changed the location of the transaction to a convenience store. Officer Bell accompanied Darlene to the store and arrested Thomas after Darlene identified him as AD.

Officers searched Thomas and discovered cocaine base, cash, and keys to a second Lexus sport utility vehicle. Officer Bell drove to the home of Thomas's girlfriend and saw a Lexus sport utility vehicle parked in the driveway. Officer Bell contacted the owner of the Lexus, who consented to a search of the vehicle. Inside the vehicle, officers discovered cocaine base, marijuana, and cash.

Officers also discovered Thomas in possession of drugs on two other

occasions. On December 8, 2006, officers stopped Thomas and discovered marijuana, cocaine hydrochloride, cocaine base, and cash in his vehicle. When an officer attempted to arrest Thomas, he assaulted the officer and escaped. On August 29, 2007, officers discovered cocaine hydrochloride, cocaine base, a large amount of cash, and documents that bore Thomas's name inside a Range Rover vehicle that an officer had seen Thomas drive on August 24, 2007.

Thomas was charged in a superceding indictment for six offenses: two counts of possession with the intent to distribute 5 grams or more of cocaine base on March 7, 2005, and December 8, 2006, 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii); three counts of possession with the intent to distribute cocaine hydrochloride on March 7, 2005, December 8, 2006, and August 29, 2007, id. §§ 841(a)(1), (b)(1)(C); and possession with intent to distribute 50 grams or more of cocaine base on or about August 29, 2007, id. §§ 841(a)(1), (b)(1)(A)(iii). The government moved to enhance Thomas's sentence based on his three prior convictions in a Florida court for possession of marijuana and cocaine.

*B. Thomas's Motions to Exclude Evidence and His Trial*

Thomas moved to suppress the evidence discovered on March 7, 2007, on two grounds. First, Thomas argued that the information Darlene provided to officers was not sufficiently reliable to create reasonable suspicion or probable

4

cause to arrest Thomas without a warrant. Second, Thomas argued that any evidence discovered after his warrantless arrest was inadmissible.

At a hearing on the motion to suppress, the government presented testimony from Officer Bell about the information provided by Darlene, the surveillance of Thomas, and Thomas's arrest. Officer Bell testified that Darlene arranged to meet Thomas at a gas station. Officer Bell stated that he accompanied Darlene to the gas station, where they observed a silver Lexus sport utility vehicle stop in the parking lot, but neither Officer Bell nor Darlene were able to identify the driver before the vehicle drove away. Officer Bell testified that he accompanied Darlene to the Snax Food Store, he recognized Thomas as he walked into the store, and when Darlene saw Thomas, she said, "That's him, that's him." On cross-examination, Officer Bell testified that he arrested Darlene because she had been in possession of drugs, she agreed to cooperate to "work off [her] charges," and she had not provided information to authorities in the past. Officer Bell also testified that he did not state that he recognized Thomas until after Darlene identified Thomas at the convenience store.

The district court denied Thomas's motion to suppress. The district court found Officer Bell credible. The court stated that, although Darlene "had never worked as a confidential informant," Officer Bell was "able to independently

5

verify information [Darlene] supplied" with information that the officer knew about Thomas and with the telephone calls between Darlene and Thomas. The district court ruled that Thomas's "arrest was supported by probable cause because a reasonable officer would have believed that [Thomas] was in possession of crack cocaine and was planning to sell it to [Darlene]."

Before trial, Thomas moved to exclude from trial the telephone conversations that Officer Bell had tape recorded. Thomas argued that the statements of Darlene were inadmissible hearsay and barred by the Confrontation Clause under Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004). The government responded that the conversations were not testimonial, were not hearsay because they were offered to place in context Thomas's responses to Darlene, and were admissible as adoptive admissions under Federal Rule of Evidence 801(d)(2)(b).

The district court denied Thomas's motion to exclude and ruled that the tape recorded conversations were not hearsay. The district court later explained that the tape recorded statements were "not hearsay" because "the statements of [Thomas] would be totally meaningless and unintelligible without [Darlene's] statements putting them in context." At trial, the government played the tape recorded conversations for the jury. The court later instructed the jury that "[w]hatever the

6

[confidential informant] may have said is offered solely to provide the context of the conversation between her and the person with whom she was speaking" and those "statements should not be considered for the truth of the matter asserted."

During trial, the government moved to dismiss Thomas's charges for possession with the intent to distribute cocaine hydrochloride on March 7, 2005, and August 29, 2007. The district court instructed the jury that the "charges [had] been withdrawn and [would] not be subject to [their] consideration." The next day, a juror sent the district court a note that asked if he should "consider all testimony." At the conclusion of the note, the juror stated that "the extraneous testimony that we have now been subjected to will be difficult to disregard and may impact our decision-making process for the remaining cases."

Thomas moved for a mistrial based on the note sent by the juror. Thomas argued that the juror had expressed "an unwillingness or inability to follow the instructions" and the wording of the note suggested that the jury was "tainted" because several jurors were confused about what evidence they could consider during deliberations. After further discussion, Thomas agreed that the district court should instruct the jury to disregard any testimony or evidence regarding Thomas's possession of cocaine hydrochloride on March 7, 2005, and August 29, 2007.

THE COURT: . . . And my suggestion, perhaps an over simplification, is that I bring them into the jury room and — or simply write this down in response to that inquiry: That because Counts Two and Six have been withdrawn, you must disregard any testimony or evidence relating to those counts.

. . .

MS. MILLS: Judge, that's satisfactory to the Defendant.

. . .

THE COURT: . . . I think it might be well to bring the panel in, because at this point, while we're assuming that the author of this inquiry did not share that information with the other members of the panel, we don't know that for sure. So I'm going to bring in the panel, tell them that we have this notation, that we have considered the matter and our response to it is as follows, and give that to them.
          Agreeable?

MS. MILLS: That's agreeable to us, Judge.

When the trial resumed, the district court told the jury that it had received a note from a juror. The district court asked if any jurors were aware of the note, and the jurors responded negatively. The district court told the jury about the contents of the note and instructed the jury to "disregard any testimony or evidence relating to powder cocaine" on March 7, 2005, and August 25, 2007. When the court asked the parties about the instruction, they responded that they were "satisf[ied]" except for an error in one of the dates. The district court gave the jury a second instruction to disregard evidence about Thomas's possession of cocaine

8

hydrochloride on March 7, 2005, and August 29, 2007. The district court later instructed the jury to "consider[] separately . . . [e]ach charge and the evidence pertaining to it." The court also instructed the jury that its decision about guilt or innocence "as to one of the offenses charged should not affect [its] verdict as to any other offense charged."

The jury found that Thomas had possessed with the intent to distribute both cocaine hydrochloride and five grams or more of cocaine base on March 7, 2005, and Thomas had possessed with intent to distribute five grams or more of cocaine base on March 7, 2005. The jury acquitted Thomas of the charge that he had possessed with intent to distribute 50 grams or more of cocaine base on August 29, 2007.

*C. Thomas's Sentencing Proceeding*

The presentence investigation report attributed to Thomas 41.6 grams of cocaine base and 400.4 grams of cocaine hydrochloride, and assigned a base offense level of 30. United States Sentencing Guideline § 2D1.1 (Nov. 2008). The report reduced the offense level by two points to adjust for the lesser offense level of 24 that would have been assigned if Thomas had been charged only for the cocaine hydrochloride. The report identified Thomas as a career offender, which increased his total offense level to 37. Id. § 4B1.1. Based on a criminal history of

9

VI, the report provided a guideline range between 360 months and life imprisonment.

Thomas did not object to the presentence report, but he requested that the court sentence him below the guideline range to 15 months of imprisonment. The district court adopted the report, but the court considered the sentencing factors, 28 U.S.C. § 3553(a), and attributed to Thomas 442 grams of cocaine using a one-to-one ratio, rather than the 100-to-1 ratio in the Sentencing Guidelines, which resulted in a sentencing range between 100 and 125 months of imprisonment. The court did not apply that lower sentencing range because the court found that Thomas was a career offender and was subject to a sentencing range between 262 and 327 months of imprisonment. The court sentenced Thomas to three concurrent sentences of 294 months of imprisonment and concurrent terms of six and eight years of supervised release. The district court explained that its "sentence at the mid-range is the appropriate sentence given the circumstances of the offense and the nature and characteristics of the Defendant."

## II. STANDARDS OF REVIEW

We apply four standards of review in this appeal. On denial of a motion to suppress, we review findings of fact for clear error and the application of law to those facts de novo. United States v. Steed, 548 F.3d 961, 966 (11th Cir. 2008).

10

Although we review evidentiary rulings for abuse of discretion, United States v. U.S. Infrastructure, Inc., 576 F.3d 1195, 1208 (11th Cir. 2009), we review de novo questions of constitutional law, United States v. Cantellano, 430 F.3d 1142, 1144 (11th Cir. 2005). We will not consider an argument waived by the complaining party. See United States v. Puleo, 817 F.2d 702, 705 (11th Cir. 1987). We review the sentence imposed by the district court for reasonableness, United States v. Williams, 526 F.3d 1312, 1321 (11th Cir. 2008), which is a deferential standard of review for an abuse of discretion, Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007).

### III. DISCUSSION

Thomas challenges his conviction and sentence on four grounds. Those four arguments fail. We address each argument in turn.

*A. Officer Bell Had Probable Cause to Arrest Thomas.*

Thomas argues that Officer Bell lacked probable cause to arrest him based on the information provided by Darlene, but we disagree. Although Darlene was a first time informant, her description and identification of Thomas was consistent with information that Officer Bell knew about Thomas. See United States v. Cotton, 721 F.2d 350, 352 (11th Cir. 1983). Darlene spoke to Thomas several times using a cellular telephone, she provided Officer Bell real time information

11

about changes in the time and location of the drug transaction, and Officer Bell observed a Lexus vehicle similar to the one owned by Thomas at both locations where Thomas and Darlene had agreed to transact. See United States v. Kent, 691 F.2d 1376, 1379–80 (11th Cir. 1982); United States v. Reyes, 792 F.2d 536, 539–40 (5th Cir. 1986). The circumstances corroborated Darlene's statement that Thomas intended to sell her cocaine and gave Officer Bell probable cause to arrest Thomas without a warrant and seize all incriminating evidence found in his possession. See United States v. Lindsay, 482 F.3d 1285, 1291 (11th Cir. 2007) ("Probable cause to arrest exists when the totality of the facts and circumstances support 'a reasonable belief that the suspect had committed or was committing a crime.'" (quoting United States v. Gordon, 231 F.3d 750, 758 (11th Cir. 2000)). The district court did not err by denying Thomas's motion to suppress.

*B. The Tape Recorded Conversations Between Thomas and the Confidential Informant Were Admissible.*

Thomas argues that the admission of tape recorded conversations between him and Darlene violated his right of confrontation under the Sixth Amendment, but we disagree. The government offered the conversations to place in context Thomas's responses to Darlene, not to establish the truth of Darlene's statements. In one conversation, Thomas agreed to sell Darlene half of one ounce of cocaine base for $435, but Thomas's portion of the conversation consisted solely of

12

uttering "yeah" to Darlene's questions. Thomas's responses are enigmatic without

Darlene's questions to place them in context. See United States v. Price, 792 F.2d

994, 997 (11th Cir. 1986). Darlene's statements in the remaining tape recordings

also provide context for Thomas's cryptic remarks to Darlene about the time and

location of the drug transaction. The district court eradicated any potential

prejudice by instructing the jury that they could consider Darlene's statements

"solely to provide the context of the conversation." See United States v. Byrom,

910 F.2d 725, 737 (11th Cir. 1990). The district court did not err by admitting the

taped conversations at trial.

*C. Thomas Waived His Request for a Mistrial.*

Thomas argues that he was denied a fair trial because a note submitted by an

unidentified juror suggesting that the jury was tainted and confused about what

evidence it could consider during deliberations, but Thomas waived this argument.

Although Thomas moved initially for a mistrial based on the note, he agreed that

any error could be cured by an instruction to the jury, and he later acknowledged

that he was satisfied with the instruction. We will not allow "counsel to preserve

an error for appellate review without giving the trial court a reasonable opportunity

to render a decision upon the same objection." Puleo, 817 F.2d at 705 (holding

that defendant waived double jeopardy challenge to retrial by failing to object to a

13

mistrial).

*D. Thomas's Sentence is Reasonable.*

Thomas's sentence is procedurally and substantively reasonable. The district court correctly calculated Thomas's sentencing range between 262 and 327 months of imprisonment. The presentence investigation report identified Thomas as a career offender, and Thomas did not object when the district court adopted the report. United States v. Beckles, 565 F.3d 832, 844 (11th Cir. 2009) ("'It is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes'" and "'precludes the argument that there was error in them.'" (quoting United States v. Wade, 458 F.3d 1273, 1277 (11th Cir. 2006)). The district court explained that it had considered the advisory sentencing factors, 28 U.S.C. § 3553(a), and concluded that a sentence in the middle of the sentencing range was necessary to address the seriousness of Thomas's crimes and his recidivism. See Gall, 552 U.S. at 51, 128 S. Ct. at 597. The district court did not abuse its discretion by sentencing Thomas to 294 months of imprisonment.

## IV. CONCLUSION

Thomas's convictions and sentences are **AFFIRMED**.

14