

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| JERMAINE D. WILLIAMS, | ) | |
| | ) | |
| Appellant, | ) | WD87599 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | |
| STATE OF MISSOURI, | ) | SEPTEMBER 30, 2025 |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Cass County, Missouri**
The Honorable R. Michael Wagner, Judge

Before Division Three:  Mark D. Pfeiffer, Presiding Judge, Cynthia L. Martin, Judge and
Janet Sutton, Judge

Jermaine D. Williams ("Williams") appeals from the motion court's denial of his

Rule 24.035[1] motion for post-conviction relief, filed after Williams's second guilty plea.

Williams argues that the plea court violated his constitutional rights when it *sua sponte*

withdrew Williams's first guilty plea without his consent, and that plea counsel provided

ineffective assistance by not timely objecting.  With respect to both claims, Williams

contends on appeal that he was prejudiced because had he been sentenced after his first

---

[1]All Rule references are to *Missouri Court Rules, Volume 1--State, 2022* unless
otherwise indicated.

guilty plea instead of after his second guilty plea, he would have received seventy days credit for time he was serving on an unrelated Kansas offense.

Finding no clear error, we affirm.

**Factual and Procedural Background**

This is the second time we have been asked to review the motion court's denial of Williams's claims for post-conviction relief. We dismissed Williams's first appeal because the motion court failed to address claims raised in a timely filed second amended motion for post-conviction relief. *See Williams v. State*, 683 S.W.3d 339 (Mo. App. W.D. 2024) ("*Williams I*"). Relevant to this appeal, we summarized the factual and procedural history in *Williams I* as follows:

> In 2013, Williams was charged in the [plea] court with first-degree robbery; armed criminal action; first-degree burglary; two counts of kidnapping; and one count of tampering with a motor vehicle in the first degree. Case No. 13CA-CR00126. The State alleged that Williams was a prior and persistent offender. The charges stemmed from events which occurred on May 29, 2012, when Williams and two others drove to a home in Cass County in a stolen vehicle; unlawfully entered the home while two victims were present; restrained the victims; and displayed a deadly weapon in order to steal jewelry.
>
> Williams entered an initial guilty plea to all six charges on April 17, 2017. The State agreed to cap its sentencing recommendation at eighteen years' imprisonment on the counts of robbery and armed criminal action, fifteen years on the count of burglary and on both kidnapping counts, and seven years on the tampering charge. The [plea] court initially accepted Williams' guilty plea, and set the matter for sentencing.
>
> At the June 5, 2017 sentencing hearing, the [plea] court *sua sponte* set aside Williams' guilty plea and set the matter over for [a jury] trial. The judge stated that, after hearing the victim impact statements, he could no longer accept a plea agreement which limited Williams' punishment to a term of 18 years' imprisonment.

2

[On June 20, 2017,] Williams' counsel filed a motion to have the [plea] judge recused from the case [and a motion for continuance of the trial], [both of] which the court granted.

On August 14, 2017, the [plea] court held a second plea hearing, in front of a different judge. Williams pleaded guilty to five of the original six felony charges; the State voluntarily dismissed the count of tampering. After hearing arguments and evidence, the [plea] court sentenced Williams to eighteen years on each count, with the sentences ordered to run concurrently.

Williams filed a *pro se* motion for post-conviction relief under Supreme Court Rule 24.035 on September 14, 2017. The [motion] court appointed counsel for Williams. On September 29, 2017, the [motion] court granted counsel's request for a thirty-day extension of time within which to file an amended motion, allowing the amended motion to be filed "within ninety (90) days of the date that the entire guilty plea and sentencing hearing transcripts are filed."

The transcripts of Williams' initial guilty plea and sentencing hearings were filed in the [motion] court on July 16, 2018. Transcripts of the August 2017 hearings--which actually resulted in Williams' convictions and sentencing--were not filed in the [motion] court at that time.

Williams was subsequently delivered to the Missouri Department of Corrections on July 9, 2019, after having served a sentence in Kansas. Appointed counsel filed an amended motion for post-conviction relief on Williams' behalf on October 7, 2019. . . .

Williams' appointed post-conviction counsel was permitted to withdraw his appearance on January 4, 2022, and new, privately retained counsel entered her appearance.

The [motion] court held a hearing on Williams' first amended motion for post-conviction relief on January 27, 2022, at which Williams and his plea counsel testified.

Following the hearing, Williams' [retained] counsel discovered that the transcripts of his August 2017 plea and sentencing hearings had not been filed with the [motion] court. Counsel filed those transcripts on January 31, 2022.

On February 10, 2022, Williams' counsel filed a motion asking the [motion] court to rule that, because the August 2017 transcripts had not previously

3

been filed, the time for Williams to file an amended motion did not begin to run until January 31, 2022, and his amended motion would not be due until May 2, 2022, ninety days later. The [motion] court did not rule on the timeliness issue at that time.

On March 13, 2022, Williams' counsel filed a second amended post-conviction relief motion. The second amended motion contained five claims, four of which were not raised in the first amended motion. . . .

On April 12, 2022, the [motion] court rejected Williams' claim that he had the right to file a timely second amended motion for post-conviction relief in 2022, because the August 2017 plea and sentencing transcripts had not previously been filed. On the same day, the [motion] court issued its judgment denying Williams post-conviction relief. The judgment explicitly stated that the [motion] court only addressed the claims asserted in Williams' September 2017 first amended motion; the [motion] court stated that "[a]ny claims not stated within the [first] Amended Motion are deemed waived."

On April 20, 2022, Williams filed a motion to amend the judgment under Rule 78.07(c), arguing that the [motion] court was required to make findings of fact and conclusions of law addressing all of the claims in Williams' second amended motion for post-conviction relief. The [motion] court did not rule on that motion. Williams' post-judgment motion was deemed denied ninety days after its filing, on July 19, 2022, by operation of Rule 81.05(a)(2)(A). . . .

*Id.* at 340-42 (emphasis omitted). For reasons explained in *Williams I*, we found that

Williams's second amended motion for post-conviction relief had been timely filed after

the deposit of transcripts from the proceedings that resulted in his conviction. *Id.* at 345.

Because the motion court failed to address the claims raised in the second amended

motion, the appeal was dismissed for want of a final judgment. *Id.*

Thereafter, the motion court considered the five claims for post-conviction relief

set forth in Williams's second amended motion, although it did so without conducting a

4

second evidentiary hearing.[2]  Those claims were that: (A) Williams received ineffective assistance of counsel when plea counsel requested a continuance of the trial scheduled after the plea court's *sua sponte* withdrawal of Williams's first guilty plea; (B) Williams received ineffective assistance of counsel when plea counsel failed to object after the plea court *sua sponte* withdrew Williams's first guilty plea resulting in a delayed sentence that failed to give credit for seventy days' time served on an unrelated Kansas offense; (C) the plea court violated Williams's constitutional right to due process and subjected Williams to double jeopardy when it *sua sponte* withdrew Williams's first guilty plea during the first sentencing hearing resulting in a delayed sentence that failed to give credit for seventy days' time served on an unrelated Kansas offense; (D) the plea court violated Williams's right to due process and subjected Williams to double jeopardy by not dismissing the charges against Williams and by instead accepting Williams's second guilty plea; and (E) Williams received ineffective assistance of counsel when plea counsel failed to request a dismissal of Williams's charges with prejudice following the plea court's *sua sponte* withdrawal of his first guilty plea.  Williams's second amended motion asked the motion court to vacate the sentences imposed following his second guilty plea and to dismiss all charges with prejudice or, in the alternative, to vacate the

---

[2]The original evidentiary hearing on Williams's first amended motion for post-conviction relief predated the filing of the second amended motion.  However, it appears the parties consented to the motion court's consideration of the claims raised in the second amended motion without the benefit of an additional evidentiary hearing.  Following the issuance of our mandate in *Williams I*, a docket entry on August 12, 2024, notes that a hearing was held in the motion court, with the State and Williams's counsel present, and with both being directed to prepare proposed judgments for the motion court's consideration within thirty days.

sentences imposed following his second guilty plea and remand for resentencing to reflect credit for the seventy-day delay in sentencing.

On September 16, 2024, the motion court issued its findings of fact, conclusions of law, and judgment denying each of the claims for post-conviction relief set forth in Williams's second amended motion ("Judgment"). With respect to Claim (A), the motion court concluded that Williams failed to establish that, but for plea counsel's request for a continuance of the scheduled jury trial, Williams would have proceeded to trial rather than plead guilty. With respect to Claim (B), the motion court concluded that "[Williams's] choice to move forward with a second guilty plea on August 14, 2017, directly rebuts [Williams's] claim that [he] would have proceeded to trial rather than pleading guilty to the charges had [plea] counsel objected to the [plea] court's *sua sponte* withdrawal of the first plea." With respect to Claims (C)-(E), the motion court rejected the essential premise that jeopardy attached when the plea court accepted Williams's first guilty plea because Williams acquiesced in the plea court's *sua sponte* withdrawal of the guilty plea.

Williams appeals. Additional facts will be addressed as relevant to the discussion of Williams's points on appeal.

**Standard of Review**

Our review of the motion court's denial of a Rule 24.035 motion for post-conviction relief is "limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 24.035(k). A motion court's "judgment is clearly erroneous when, in light of the entire record, the court is left with a definite and

6

firm impression that a mistake has been made." *Micheaux v. State*, 675 S.W.3d 658, 664 (Mo. App. W.D. 2023) (quoting *Courtney v. State*, 662 S.W.3d 344, 349 (Mo. App. W.D. 2023). We presume the findings and conclusions are correct, deferring to the motion court's credibility determinations. *Id.*

Williams bears the burden of demonstrating that the motion court committed clear error in denying his Rule 24.035 motion for post-conviction relief. *Griffin v. State*, 711 S.W.3d 633, 636 (Mo. App. W.D. 2025).

**Analysis**

Williams raises two points on appeal challenging the denial of his second amended motion for post-conviction relief. Williams's first point claims that Williams received ineffective assistance of counsel when plea counsel failed to object to the plea court's *sua sponte* withdrawal of Williams's first guilty plea because a reasonable probability exists that had plea counsel timely objected, Williams "would not have been sentenced [seventy] days after the first sentencing hearing, causing him to be incarcerated for an additional [seventy] days." The second point claims that the plea court's *sua sponte* withdrawal of Williams's first guilty plea was without Williams's consent in violation of his due process rights and rights against double jeopardy, and that but for the plea court's actions, Williams "would not have been sentenced [seventy] days after the first sentencing hearing, which caused him to be incarcerated for [seventy] more days."

Williams's points on appeal correspond, respectively, with Claims (B) and (C) in the second amended motion for post-conviction relief. Claims (A), (D), and (E) have been abandoned on appeal.[3] We address Williams's points on appeal in reverse order.

***The motion court did not commit error in denying Williams's claim that the plea court violated his constitutional rights by* sua sponte *withdrawing his first guilty plea because the record supports the conclusion that Williams consented to the withdrawal (Point Two)***

Williams's second point on appeal alleges that the plea court violated his due process rights and his right to be free from double jeopardy when it *sua sponte* withdrew his first guilty plea and then accepted his second guilty plea. "The right to be free from double jeopardy is a constitutional right that goes to the very power of the State to bring the defendant in the court to answer the charge brought against him." *State v. Neher*, 213 S.W.3d 44, 48 (Mo. banc 2007). "The federal protection, in the Fifth Amendment, provides that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb.'"[4] *State ex rel. Kemper v. Vincent*, 191 S.W.3d 45, 50 (Mo. banc 2006).

---

[3]Claims (D) and (E) claim the same error as is asserted in Claims (B) and (C), but rely on markedly different claims of prejudice in the form of a right to dismissal of the charges filed against Williams based on double jeopardy. No such claim of prejudice or right to relief is asserted in this appeal. Instead, consistent with Claims (B) and (C), Williams argues only that the delay in sentencing he experienced as a result of the withdrawal of his first guilty plea meant he could not receive seventy days' credit for time served on an unrelated Kansas offense.

[4]The Fifth Amendment of the United States Constitution "'applies to Missouri through the Fourteenth Amendment.'" *State ex rel. Kemper*, 191 S.W.3d at 50 (quoting *Benton v. Maryland*, 395 U.S. 784, 787 (1969)). The Missouri Constitution also independently includes a double jeopardy provision at Article 1, section 19. However, that provision "applies only to retrial after an acquittal." *Id*. (citing *State v. Tolliver*, 839 S.W.2d 296, 299 (Mo. banc 1992)). Because the *sua sponte* withdrawal of Williams's first guilty plea was not an acquittal, the Missouri Constitution's prohibition against double jeopardy is not implicated in this case.

8

A criminal defendant does not have a constitutional right to have a guilty plea accepted by the court. *State v. Jenkins*, 675 S.W.3d 704, 711 (Mo. App. W.D. 2023). As such, "it is well settled that a trial court may exercise its sound discretion to reject a guilty plea," and the court is not required to accept a plea agreement. *State v. Creamer*, 161 S.W.3d 420, 424 (Mo. App. W.D. 2005). While the trial court may reject a guilty plea, jeopardy attaches to a guilty plea upon a plea court's unconditional acceptance of the plea. *Peiffer v. State*, 88 S.W.3d 439, 444 (Mo. banc 2002); *see also Johnson v. State*, 529 S.W.3d 36, 40 (Mo. App. W.D. 2017). Once jeopardy attaches, the defendant is bound to his plea so that he may only withdraw a guilty plea "by persuading the court that the plea was involuntary." *Creamer*, 161 S.W.3d at 424. Correspondingly, the attachment of jeopardy prohibits the court from "set[ting] aside the plea on its own motion . . . unless it determines that some material aspect of the plea proceeding rendered the plea unknowing or involuntary." *Johnson*, 529 S.W.3d at 40 (quoting *State v. Prince*, 518 S.W.3d 847, 852-53 (Mo. App. W.D. 2017)). However, "the court is not prohibited from setting aside a guilty plea where the defendant consents to that course of action." *Id.* That is because "[d]ouble jeopardy does not attach when a defendant consents to termination of the proceeding." *Id.* (quoting *State v. York*, 252 S.W.3d 245, 249 (Mo. App. S.D. 2008)).

Here, it is uncontested that the plea court unconditionally accepted Williams's first guilty plea on April 17, 2017, and that it did so subject to a plea agreement wherein the State agreed to cap its sentencing recommendation at eighteen years' imprisonment on the counts of robbery and armed criminal action, fifteen years on the count of burglary and

9

on both kidnapping counts, and seven years on the tampering charge. It is thus uncontested that jeopardy attached upon the unconditional acceptance of Williams's first guilty plea.

It is also uncontested that the plea court *sua sponte* withdrew Williams's first guilty plea in the middle of a sentencing hearing on June 5, 2017, after victim impact statements led the plea court to angrily exclaim that victims had not been informed of the State's agreement to cap its sentencing recommendation.[5] No one contends that the plea court's *sua sponte* withdrawal of Williams's first guilty plea was based on "some material aspect of the plea proceeding [that] rendered the plea unknowing or involuntary." *Johnson*, 529 S.W.3d at 40 (quoting *Prince*, 518 S.W.3d at 852-53). Thus, unless Williams consented to the plea court's *sua sponte* withdrawal of his first guilty plea, the plea court's action was not authorized, and exposed Williams to subsequent prosecution for the same offenses in violation of his right to be free from double jeopardy.

The motion court found that Williams's Claim (B), which alleged ineffective assistance because plea counsel failed to object to the plea court's *sua sponte* withdrawal of Williams's first guilty plea, constituted a concession of consent because the lack of an objection established Williams's "acceptance or acquiescence of the setting aside of the plea at the time it was done." The Judgment thus concluded that the plea court did not violate double jeopardy by accepting a second guilty plea from Williams because he

---

[5]Article 1, section 32 of the Missouri Constitution addresses the rights of crime victims and provides, among other things, that crime victims shall have the right, upon the victim's request, "to be informed of and heard at guilty pleas." Mo. Const. art. 1, sec. 32.1(2). *See also* section 595.209 (addressing the rights of crime victims).

10

consented to the withdrawal of his first guilty plea. In reaching this conclusion, the motion court relied on *Johnson*, and found the facts in Williams's case to be analogous.

In *Johnson*, the defendant pled guilty in exchange for the State's sentencing recommendation. 529 S.W.3d at 38. The court accepted the defendant's guilty plea, ordered the preparation of a sentencing assessment report ("SAR"), and scheduled a sentencing hearing. *Id.* On the day of the sentencing hearing, the court entered an order setting aside the defendant's guilty plea following "consultation and by agreement of counsel and the defendant" because the defendant denied committing the acts to which he pleaded guilty to the SAR's writer. *Id.* Thereafter, the prosecution filed a superseding indictment. *Id.* The defendant pleaded guilty under a new plea agreement. *Id.* At the second guilty plea hearing, the court asked the prosecution if there had been prior plea offers. *Id.* The prosecution informed the court that the defendant "withdrew his [first] plea," and the defendant's plea counsel told the court that the prosecution made "an accurate recitation of the plea discussions in this case." *Id.* at 38-39. The court accepted the defendant's plea and sentenced the defendant according to the prosecution's recommendation. *Id.* at 39.

The defendant filed a post-conviction motion which argued that the court lacked the authority to set aside the first guilty plea and violated the defendant's protection against double jeopardy by accepting the second guilty plea. *Id.* The motion court denied the defendant's claim, finding that the defendant consented to the withdrawal of his first guilty plea. *Id.* We affirmed, concluding that the record supported the motion

11

court's determination that the defendant consented to the withdrawal of his first guilty plea. *Id.* at 41. We explained:

> [T]he . . . court's order setting aside [the defendant's] original plea specifically states that the court decided to set the plea aside "[i]n consultation and by agreement of counsel and the defendant." In addition, when the prosecution at a later hearing stated to the court that [the defendant] "subsequently withdrew his [original] plea," [the defendant's] counsel agreed that the prosecution's description of the history of plea negotiations was accurate. The fact that [the defendant] never objected to the setting aside of his original plea, and never asked his attorney to seek to reinstate his original plea, further supports the [motion] court's conclusion that he had in fact consented to the withdrawal of his original plea.

*Id.*

The circumstances in this case are very different from those in *Johnson*, where we found that the record supported a finding that the defendant *expressly* consented to the withdrawal of his guilty plea. Here, there is nothing in the record to indicate that the plea court *sua sponte* withdrew Williams's first guilty plea after consulting with Williams or his counsel, or that Williams confirmed in a later proceeding that he had agreed to the withdrawal of his first guilty plea. There is simply no evidence to support a finding that Williams *expressly* consented to the withdrawal of his first guilty plea.

Although the motion court incorrectly found that Williams's case was analogous to *Johnson*, that does not require us to find that the plea court committed clear error in concluding that Williams's failure to object to the plea court's *sua sponte* withdrawal of his first guilty plea sufficed as his consent to the withdrawal of the plea. A defendant's consent to the termination of proceedings, whether by way of a mistrial or the withdrawal of a guilty plea, "may always be implied from the totality of circumstances." *State v.*

12

*Tolliver*, 839 S.W.2d 296, 299 (Mo. banc 1992). "An implied consent to a [termination of proceedings] has the same effect as an express consent and vitiates any double jeopardy bar to [subsequent prosecution for the same offenses]." *Id.* (quoting *Camden v. Cir. Ct. of Second Judicial Cir.*, 892 F.2d 610, 614 (7th Cir. 1989)). "Key to determining implied consent is whether the defendant had an opportunity to object." *Id.* at 300 (citing *United States v. Puleo*, 817 F.2d 702, 705 (11th Cir. 1987)). "Consent to a mistrial may be inferred even from silence where there was an opportunity to object but defendant fails to do so." *Id.* (citing *United States v. DiPietro*, 936 F.2d 6, 9-10 (1st Cir. 1991); *Puelo*, 817 F.2d at 705).

In *Tolliver*, our Supreme Court concluded that a defendant impliedly consented to a mistrial even though the defendant's counsel asked that the mistrial be "with prejudice" after the trial court expressed its intent to declare a mistrial. *Id.* at 298, 300. Our Supreme Court held:

> Once the trial court's intention to declare a mistrial became apparent and fixed, it became incumbent on defense counsel to state clearly her objection and her desire to proceed. The court and opposing counsel need not engage in speculation. Simply asking that the declaration of the mistrial be "with prejudice" was not sufficiently specific to apprise the trial court of a request that jeopardy attach. Counsel clearly enunciated the defense theory in the motion to dismiss at the beginning of the second trial: that . . . testimony was an intentional and deliberate attempt to provoke a mistrial, calculated to permit the state to delay a trial until its witness was available. It was necessary for counsel at the first trial clearly to state this ground. Although counsel later specifically alleged the claim and its basis in the motion at the commencement of the second trial, this was too late to constitute a specific objection to the mistrial.

*Id.* at 300.

13

The circumstances here are indistinguishable from *Tolliver*, and in fact offer an even more compelling case for concluding that Williams impliedly consented to the withdrawal of his first guilty plea. The transcript from the sentencing hearing conducted on June 5, 2017, reflects that no objection was made by Williams to the plea court's *sua sponte* withdrawal of Williams's first guilty plea. Williams's plea counsel testified at the motion hearing that he did not recall if he objected to the plea court's *sua sponte* withdrawal of Williams's guilty plea, but noted that had he objected "I doubt it would have mattered at all," as the plea court was "very, very upset that day" with "most of his anger [being] directed toward the State," leaving plea counsel of the view that it "was a very good time for me to keep my mouth shut." This evidence supports the conclusion that although the opportunity to do so existed, Williams did not timely object to the plea court's *sua sponte* withdrawal of the first guilty plea.

Further, unlike the circumstances in *Tolliver*, Williams never complained while his matter remained pending at the plea court level that the effect of withdrawal of his first guilty plea was to expose him to double jeopardy. Williams's counsel filed a motion to recuse the original plea judge fifteen days after the first guilty plea was withdrawn. The motion generally argued that the plea court "lacked sufficient legal grounds or authority" to withdraw Williams's first guilty plea because there was no basis to conclude the plea was not knowingly and voluntarily entered. But, Williams's motion raised this assertion only to seek recusal of the original plea judge for cause because his expressed anger during the first sentencing hearing rendered him not impartial. The motion to recuse did not argue that the *sua sponte* withdrawal of Williams's first guilty plea subjected

14

Williams to double jeopardy. Instead, after the motion to recuse was granted and a new judge was assigned, Williams proceeded without objection to a second guilty plea hearing barely two months after the first guilty plea was withdrawn, during which he accepted a slightly better plea agreement than that originally offered by the State.[6] At no point in the proceedings before the plea court did Williams ever express his desire to proceed with the first guilty plea or his belief that by withdrawing his first guilty plea, the plea court was subjecting him to double jeopardy. *Cf. State v. Tiger*, 972 S.W.2d 385, 390-91 (Mo. App. W.D. 1998) (distinguishing *Tolliver* because counsel stated that he wanted to proceed with trial at the point when the trial court indicated an intent to declare a mistrial); *State ex rel. Reynolds v. Kendrick*, 868 S.W.2d 134, 137 (Mo. App. E.D. 1993) (same).

Even now in this appeal, although Williams complains that the delay in his sentencing deprived him of seventy days credit for time served on an unrelated Kansas conviction in the period between the first sentencing hearing and the second guilty plea hearing, Williams has not asked this court to vacate the conviction and sentences imposed after the second guilty plea, and instead seeks only an ordered credit against the sentences imposed during the second guilty plea hearing. This request for relief is not consistent with a belief that the second guilty plea hearing violated Williams's right to be free from double jeopardy.

---

[6]During the second guilty plea hearing, the State dropped the first-degree tampering charge as to which it had originally agreed to cap its sentencing recommendation at seven years. Williams was thus not convicted of this charge, though he pled guilty to the charge during his first guilty plea hearing.

15

Based on the circumstances in this case, we cannot find that the motion court committed clear error when it concluded that Williams consented to the *sua sponte* withdrawal of his first guilty plea by failing to timely object. Williams has not sustained his burden to establish that the plea court violated his constitutional rights to due process and to be free from double jeopardy when it *sua sponte* withdrew his first guilty plea and then accepted a second guilty plea.

Williams's second point on appeal is denied.

***The motion court did not commit error when it concluded that Williams failed to sustain his burden to establish ineffective assistance of counsel based on plea counsel's failure to object to the* sua sponte *withdrawal of Williams's first guilty plea (Point One)***

In his first point on appeal, Williams's argues that he received ineffective assistance of counsel because plea counsel failed to object when the plea court *sua sponte* withdrew his first guilty plea, and that he was prejudiced because had plea counsel objected, there is a reasonable probability that the first guilty plea would not have been withdrawn, and Williams would have been sentenced as originally scheduled on June 5, 2017. Had he been sentenced on this date, Williams argues he would have been entitled to a seventy-day credit for time he thereafter served on an unrelated Kansas conviction.

When analyzing a claim of ineffective assistance of counsel arising out of the plea process, we utilize the same two-part standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). That means a movant must show by a preponderance of the evidence that trial counsel's performance was deficient because he failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances (the "performance prong"), and that the deficient performance prejudiced

16

the movant (the "prejudice prong").  *Strickland*, 466 U.S. at 687; *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. banc 1997).  The failure to prove either the performance prong or the prejudice prong is fatal to a claim of ineffective assistance of counsel.  *Micheaux*, 675 S.W.3d at 669.

The assessment of plea counsel's performance is "highly deferential" to plea counsel, requiring the movant to overcome the "strong presumption" that plea counsel acted reasonably and effectively.  *Browning v. State*, 685 S.W.3d 639, 643-44 (Mo. App. W.D. 2024).  The standard for prejudice articulated in *Strickland* requires a movant to show a reasonable probability that, but for counsel's alleged deficiencies, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 694.

In *Hill v. Lockhart*, 474 U.S. 52 (1985), United States Supreme Court held that, in the context of a claim of ineffective assistance of counsel involving the acceptance of a guilty plea, the *Strickland* prejudice prong requires a movant to establish "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  474 U.S. at 59.  "*Hill* does not, however, provide the sole means for demonstrating prejudice arising from the deficient performance of counsel during plea [proceedings]" *Missouri v. Frye*, 566 U.S. 134, 148 (2012).  Rather, Strickland's required "inquiry into whether 'the result of the proceeding would have been different,'" does not always "require[] looking . . . at whether the defendant would have proceeded to trial absent ineffective assistance," and instead is driven by the context in which the ineffective assistance of counsel claim arose.  *Id.* (quoting *Strickland*, 466 U.S. at 694).

17

The motion court concluded as to Claim (B) that Williams did not meet his burden to prove that plea counsel's performance was deficient, or that he was prejudiced because but for plea counsel's failure to object, "he would not have pleaded guilty and instead would have insisted upon going to trial."

The motion court's finding with respect to plea counsel's performance is not clearly erroneous. Plea counsel testified at the motion hearing that had he objected, "I doubt it would have mattered at all," as the plea court was "very, very upset that day" with "most of his anger [being] directed toward the State," leaving plea counsel of the view that it "was a very good time for me to keep my mouth shut." Our review of the sentencing hearing transcript supports plea counsel's belief that an objection would not have resulted in the plea court's agreement to proceed with sentencing.

The plea court was angry because it learned during compelling and emotional victim impact statements that victims had not been apprised in advance of Williams's plea agreement terms and that one victim had recently died by suicide. The plea court said:

> I don't think I can do this plea bargain. I don't think I can, not in this situation. It's unfortunate that Ms. H. [referring to one of Williams's victims] isn't here any longer [in reference to having just learned that the victim had recently died by suicide]. . . . In reviewing the Sentencing Assessment Report, the issues that we have got here, it would just be just as easy for me to try this case and let everybody hear all the evidence and let a jury decide it. . . . I think we probably ought to just get it ready for a jury trial. I will set aside the plea of guilty in this case and then that way we'll get it set for jury trial. That way everybody can bring up all the factors that they need to because I don't know that I can accept eighteen years myself after hearing the situation that we have got hers. So I will do that, and then that way you and . . . Williams can talk about it.
>
> I do not want the State of Missouri to do one thing until the victims know everything that is going on in this case. I don't care if it's a continuance or a

18

review of a court date; everybody better be notified of this from now on. I do not want that happening again in the course of any case that I am handling. I am more than willing to take abuse . . . but I want the victims of every person that's involved in these kind of cases to know about it. . . .

. . . .

So I have got no fear of that. I have no fear about what I am going to get myself into, but if we're going to do this kind of stuff, we are going to make sure everybody knows what you have agreed to. That's the problem that I've got here, and that's what I have got a problem with.

The plea court then immediately noted that it was setting Williams's case for trial on July 17, 2017, and the record was closed.

Based on these strident comments, we cannot find that Williams has sustained his burden to establish that an objection to the *sua sponte* withdrawal of Williams's first guilty plea would have been successful in persuading the plea court to proceed with sentencing.[7]

Moreover, it is apparent from the tenor of the plea court's comments that even had it been persuaded to proceed with sentencing following an objection by plea counsel, it is highly unlikely that the plea court would have honored the State's recommendation for a sentencing cap of eighteen years.[8] Plea counsel's testimony to the effect that it was a

---

[7]Though an objection by plea counsel to the *sua sponte* withdrawal of Williams's first guilty pleas coupled with a clear indication of Williams's desire to proceed with sentencing would have assisted Williams's claim that he did not consent to the *sua sponte* withdrawal of his guilty plea and was thus subjected to double jeopardy (the subject of Point Two on appeal), Williams's second amended motion for post-conviction relief does not assert that he was prejudiced by plea counsel's failure to object to the *sua sponte* withdrawal of his first guilty plea because the failure constituted implied consent to the withdrawal.

[8]The record reflects that although Williams and the State had a plea agreement, Williams's plea was nonetheless an open plea.

19

"very good time for me to keep my mouth shut" reflects a strategic decision not to object that does not fall outside the range of competent assistance.  *See, e.g.*, *Hendricks v. State*, 663 S.W.3d 875, 889 (Mo. App. E.D. 2023) (holding that counsel's decision not to object to hearsay testimony during a sentencing hearing did not fall outside range of professional competent assistance where objection would have drawn attention to the testimony, resulting in more harm than good).

Because Williams has not sustained his burden to establish deficient performance by plea counsel, we need not address his claim of prejudice.[9]  *Micheaux*, 675 S.W.3d at 669.  We do note that the motion court concluded that Williams was not prejudiced because he did not prove that but for plea counsel's failure to object, Williams would have insisted on going to trial.  This was not the proper legal standard against which prejudice should have been determined.  *See Frye*, 566 U.S. at 148.  The essence of Williams's claim was not that he would have proceeded to trial had plea counsel objected to the withdrawal of his first guilty plea.  Instead, Claim (B) in Williams's second

---

[9]It is nonetheless relevant to note that Williams's claim of prejudice is limited to an assertion that the delay in his sentencing rendered him unable to receive credit for time served for the seventy days he was serving on an unrelated Kansas conviction between the first sentencing hearing and the second guilty plea hearing.  Williams thus sought relief from this court in the form of a seventy-day credit against his current sentences.  However, "Rule 24.035 motions cannot include claims of credit for time served." *Murphy v. State*, 873 S.W.2d 231, 232 (Mo. banc 1994).  The statutory scheme for calculating credit for time served "contemplates an administrative and not a judicial determination of the jail time to be credited, with no sharing of jurisdiction between the two branches of government." *Id.* (quoting *State ex rel. Jones v. Cooksey*, 830 S.W.2d 421, 425 (Mo. banc 1992)); *see also Farish v. Mo. Dep't of Corrs.*, 416 S.W.3d 793, 798 (Mo. banc 2013) (holding that the calculation of jail-time credit is an administrative function of the Department of Corrections so that a sentencing court has no authority to award jail-time credit).

amended motion for post-conviction relief alleged that had plea counsel objected at the June 5, 2017 sentencing hearing to the plea court's *sua sponte* withdrawal of his guilty plea, it "would have likely resulted in . . . Williams being sentenced at that time." Although the motion court erroneously applied the wrong legal standard to Williams's claim of prejudice, that error is rendered superfluous by our finding that Williams has not established that plea counsel's performance was deficient.

Williams's first point on appeal is denied.

## Conclusion

The motion court's Judgment is affirmed.

_____
Cynthia L. Martin, Judge

All concur